THE GILBERT BOOK COMPANY, Respondent, v. SHERIDAN et al., Appellants.

St. Louis Court of Appeals, October 17, 1905.

1. **CONDITIONAL SALE: "In Good Faith."** Under the provision of section 3412, Revised Statutes of 1899, that sales upon certain conditions mentioned "would be void as to all subsequent purchasers in good faith and creditors," the term "good faith" applies to purchasers only and not to creditors, so that such a sale would be void as against a creditor with or without notice.

2. ——: **Bailment.** An attorney undertook to write a text-book for a publishing house, agreeing to accept his compensation in royalties on the books sold, under a contract which provided that the publishing house should lend him certain books for use in the preparation of the work. On completion of the work,

such books were to become his and charged on account of royalties which might be due him. *Held*, since there was no payment down for the books and the transaction was described as a loan in the contract, it was not a conditional sale within the provisions of sections 3412 and 3413, Revised Statutes of 1899, but a loan or bailment so that the bailee could not convey title as against the owner.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood*, Judge.

AFFIRMED.

*Henry B. Davis* for appellants.

*Arthur E. Kammerer* for respondent.

(1) The books, under the contract, were merely loaned to Reading; he was, therefore, simply a bailee, and hence without power to convey title, even to an innocent purchaser for value. Oyler v. Renfro, 86 Mo. App. 321; Moore v. Simms, 47 Mo. App. 182; Hendricks v. Evans, 46 Mo. App. 313. (2) The transaction between Reading and respondent was not a "conditional sale" under the provisions of section 3412, Revised Statutes 1899: (a) There is no condition that the books shall belong to Reading whenever he shall pay a certain sum. (b) There is no condition in regard to the title to the books remaining in the respondent until a certain sum or the value of the books is paid by Reading. (3) Section 3401, Revised Statutes 1899, regarding loans of property, can have no application in this case; there was no possession in Reading "for the space of five years." Miller v. Bascom, 28 Mo. 352. But even if the transaction between respondent and Reading can in any sense be construed as a "conditional sale" under the provisions of section 3412, Revised Statutes 1899, appellant Phillip H. Sheridan can not avail himself of the benefits of the statute, as he has not shown himself to be a "subsequent purchaser in good faith." Kingsland v. Drum, 80 Mo.

646; Oester v. Sitlington, 115 Mo. 247; sec. 3412, R. S. 1899; Lee v. Bowman, 55 Mo. 400; Coover v. Johnson, 86 Mo. 533; Young v. Schofield, 132 Mo. 650; Stephenson v. Kilpatrick, 166 Mo. 262; Conn. Mut. Life Ins. Co. v. Smith, 117 Mo. 261; Holdsworth v. Shannon, 113 Mo. 508; State ex rel. v. O'Neill, 151 Mo. 67; Edwards v. Railway, 82 Mo. App. 96.

## STATEMENT.

This is an action in replevin. The plaintiff, the Gilbert Book Company, a corporation, is engaged in the publishing and selling of law books in the city of St. Louis. On or about April 28, 1903, it made an arrangement with one Wilbur B. Reading, an attorney at law in said city, to prepare and edit for it a book on civil instructions to juries, which work when completed, was to be published and put upon the market by said book company. Reading was to be compensated by certain royalties on the sale of the book. As a part of the arrangement and in aid thereof, the Gilbert Book Company placed in Reading's office, under a writing which denominated the transaction a loan, a full set of the Missouri Supreme Court Reports, consisting of volumes one to one hundred and seventy-three, inclusive, and a full set of the reports of the St. Louis and Kansas City Courts of Appeals, the same consisting at that time of volumes one to ninety-seven, inclusive, together with six volumes of Pattison's Missouri Digest, and certain other books not necessary to mention. It seems that, by the arrangement, the books were said to be loaned to Reading for his use in preparing said work on instructions, and in furtherance thereof. They were placed in his office with the agreement expressed in writing that upon the completion of the work, the Supreme and Courts of Appeals Reports and the Digests were to become the property of Reading, to be charged therefor on account of his royalties at the regular price of said books. In the meantime

and until the work on instructions was completed, the books were to remain the property of the Gilbert Book Company.· A few months after this arrangement and prior to Reading's completion of the work agreed upon, about August 17, 1903, Reading executed a chattel mortgage on said books to John W. Sheridan as nominal mortgagee, but in fact, to secure a debt mentioned therein of $165 falling due fifteen days after date thereof and owed by Reading to Phil. W. Sheridan, who was the real party in interest. The chattel mortgage was never acknowledged or filed for record.

Mr. Reading had desk room at the time the mortgage was given and thereafter in the office of Phil. W. Sheridan, and was in his employ. Some time in December of that year, Mr. Reading, without ceremony, departed the city of St. Louis for parts alleged by his friends to be unknown. The book on civil instructions never materialized. Within a few days after his departure the Gilbert Book Company asserted its claim to the law books mentioned and Mr. Sheridan denied such claim, produced the chattel mortgage and asserted that as the books were in his office, the mortgage being past due and condition broken, he had a superior right as mortgagee in possession and therefore refused to deliver possession or permit the Gilbert Book Company to take possession. Thereupon this proceeding by replevin was instituted before a justice of the peace for the books mentioned in the chattel mortgage. The book company prevailed in the justice's court and Sheridan appealed to the circuit court where the case was tried at the April term, 1904, to the judge of the circuit court without the intervention of a jury. The book company asserted its ownership to the books and that Sheridan knew, prior to and at the time of the mortgage, that the books were not the property of Reading and that the same were the property of plaintiff and that Sheridan had knowledge of the arrangement whereby Reading was in possession thereof, therefore Sheridan was not a mortgagee or creditor of

Reading in good faith and that the mortgage was void as to plaintiff. Sheridan maintained the converse of this proposition. The issue of fact was tried to the judge of the circuit court without the intervention of a jury. Evidence pro and con was introduced thereon by the respective parties. The result was the plaintiff prevailed a second time and the defendants perfected their appeal to this court.

The arrangement whereby Reading became in possession of the books is contained in and is evidenced by the following letter of proposal addressed to the book company by Reading and the unconditional acceptance on the same date by the Gilbert Book Company thereon. It is as follows:

"Gilbert Book Company, City.

"Gentlemen: I propose to prepare a work on civil instructions, local to the State of Missouri, to contain about 700 or 800 pages, and to complete the same ready for publication on or about the first day of January, 1904. I will do all the editorial work and read the proof. My compensation to be 10 per cent on the price of the first 200 sold, 15 per cent on the second 200, and 20 per cent on all additional copies. The book not to be sold for less than $6 per copy retail, or $4.50 wholesale. You to *lend* me a full set of Missouri Supreme Court Reports, Missouri Appeal Reports, Pattison's Digest, and such other general works as I may need from time to time in the preparation of the work and which you carry in stock. Upon completion of the work, the Supreme and Appeal Reports and Digests are to become my property, and I am to be charged on account of my royalties with the regular price thereof. I do not desire any cash advances. You are to supply me with five copies free for my use, on which no royalty is to be paid.

"(Signed.)                    WILBUR B. READING.

"Accepted 4-28-03. Gilbert Book Co., M. J. Gilbert, Prest."

It will be observed that the writing above set out, denominated the transaction a loan and that the evident purport of the whole paper is to the effect that the Gilbert Book Company loaned Reading the books mentioned, up to the time he should complete the work on civil instructions, at which time the books were to become the property of Reading and he was to be charged by the Gilbert Book Company with the regular price thereof, which was to be settled by deductions from the royalties coming to Reading under the former part of the contract.

There were no instructions asked or given in the court below nor was there any finding of facts, and it is difficult for us to ascertain upon what theory the case was tried there. It is contended here, however, on the part of appellant, that the transaction between the Gilbert Book Company and Reading was a conditional sale and for that reason is void as to the rights of appellant, who was a subsequent creditor and extended credit on the faith of Reading's ownership of these books. There was evidence introduced in the court below to the effect that the appellant knew the books did not belong to Reading at the time he took the mortgage. This was presented upon the theory that unless appellant was a subsequent creditor of Reading in good faith, without notice of the Gilbert Company's claim, his mortgage would be void. From the meager showing in the record, we cannot determine whether the trial court determined the issue upon this theory or not. It appears to us that the question of good faith or notice could have no weight in this case one way or another unless the transaction between the Gilbert company and Reading was a conditional sale, and we do not understand it to be such. On the other hand, it appears clearly to this court that the transaction was a mere loan of the books, or bailment, by the Gilbert company to Reading and that the parties so understood it is evidenced from the fact that they de-

114 app—22

nominated it a loan in the writing above set out. These questions we will advert to in the opinion.

NORTONI, J. (after stating the facts).—It is earnestly contended on the part of appellant that the transaction between the Gilbert company and Mr. Reading, whereby Reading became possessed of the books in controversy, was a conditional sale and as such, falls within the inhibition of section 3412, Revised Statutes 1899, that in the absence of its being "executed, acknowledged and recorded as provided in cases of mortgages of personalty," it is therefore void as to appellant who was, by his chattel mortgage, a subsequent creditor of Reading. By reference to section 3412, supra, on which appellant relies, it will be observed that it is provided as follows:

"In all cases where any personal property shall be sold to any person, to be paid for in whole or in part in installments . . . or delivered to another on condition that the same shall belong to the person purchasing . . . or receiving the same whenever the amount paid shall be a certain sum, or the value of such property, the title to the same to remain to the vendor . . . or deliverer of the same, until such sum, or the value of such property, or any part thereof, shall have been paid, such condition in regard to the title so remaining until such payment, shall be void as to all subsequent purchasers in good faith and creditors, unless such condition shall be evidenced by writing, executed, acknowledged and recorded as provided in cases of mortgages of personal property."

It would seem from a casual reading of this section that if appellant had notice of the Gilbert company's claim on the books prior to the taking of the mortgage thereon, inasmuch as the words "without notice" and "in good faith" signify the same thing in our law (Lee v. Bowman, 55 Mo. 400; Coover v. Johnson, 86 Mo. 533) he could not be, and is not a creditor in good faith and

therefore is not one of the class who would be entitled to have the Gilbert company's claim acknowledged and recorded. It appears, however, that our Supreme Court in Collins v. Wilhoit, 108 Mo. 451, 18 S. W. 839, in construing section 3410 of the same chapter and akin to the section hereunder consideration, has held that the words "good faith" employed in that section have no reference and do not qualify the word "creditors" therein and that they have relation to the words "subsequent purchasers'" only. The ruling in that case does not conform to that in Coover v. Johnson, 86 Mo. 533, on this proposition, and in fact directly overrules the Coover case and is the latest expression of the Supreme Court thereon. It seems to be conclusive here on this question, however, and in the language of the Kansas City Court of Appeals: "Under that statute (sec. 3412, the conditional-sales section under consideration in this case) a conditional sale is void as against a creditor prior or subsequent, with or without notice. It was so held in construing the same language found in section 3410 of the same statute. [Collier v. Wilhoit, 108 Mo. 451; s. c., 35 Mo. App. 555.]" [Oyler v. Renfro, 86 Mo. App. 321-325.]

Therefore, it appears that the element of appellant's good faith might have entered into the case had he been a subsequent purchaser from Reading, as the words "good faith" employed in the statute are confined to the case of a subsequent purchaser only, by the adjudications supra, but inasmuch as appellant was, by virtue of his chattel mortgage, a creditor of Reading and not a subsequent purchaser, he would not be precluded by notice of Gilbert company's claim to the books, provided the transaction under which Reading was in possession of the books was a conditional sale thereof to him, such as is contemplated by section 3412 supra. [See authorities supra.] Being a creditor of Reading as mortgagee in possession, his right of possession would be good against the Gilbert company under this statute, if the

transaction was a conditional sale, as under such circumstances, the Gilbert company's claim would be good as against a creditor only by being properly acknowledged and recorded. This much has been said on this branch of the case because much stress seemed to be placed upon the question of good faith of the appellant's mortgage in the trial court, as appears by the examination of the witnesses in that behalf. We are unable to discern from the record, however, that the case was decided by that court upon the theory that appellant was precluded by notice of the Gilbert company's claim and was therefore found to be one of that class, the same as a subsequent purchaser without notice, who are not entitled to that constructive notice provided for by the statutory requirement as to acknowledgment and the recording of such conditional sales. If this were a conditional sale by the Gilbert company to Reading, then under the authorities supra, the judgment would necessarily be reversed. We do not understand it to be such, however. One reason for this conclusion may be found in section 3413, Revised Statutes 1899, which is next succeeding that pertaining to conditional sales and a part of the legislation on the subject. By it, it is provided that when property is sold on condition, as is contemplated under the prior section, it shall be unlawful for the vendor or deliverer to re-take possession of such property without refunding to the purchaser the sum or sums of money so paid thereon after deducting therefrom a reasonable compensation for the use of such property, which in no case shall exceed twenty-five per cent of the amount so paid. So much of these statutes as relate to a sale, when read together, clearly contemplate a sale or transfer of property between the original parties *in praesenti*, with some sort of reservation as to title in the vendor, no doubt for the purpose of securing the purchase price or a portion of it. Such sales are usually either on installments or for cash in part, or credit in toto or in part, and in event payments have been made

on account thereof, the refund provided for must be made. [Gentry v. Templeton, 47 Mo. App. 55.] It is palpable that in the contract between the Gilbert company and Reading, no money was paid by Reading on the books, nor was there any money to be paid thereon. No credit was extended to him, nor was there title or lien sought to be reserved by the vendor to secure the purchase price. No sale was to be made until after Reading had completed his work on civil instructions and then a special fund was created out of the royalties arising from the sale of the book, out of which the Gilbert company was to collect its pay. Therefore, there could have been no refunding of the purchase price by the Gilbert company as contemplated under the statute quoted concerning conditional sales, as no money was either paid or to be paid until a long time thereafter and then only upon the contingency that Reading completed the work on civil instructions and the fund was thereby created by which the Gilbert company collected its pay. Another reason why we cannot hold this transaction to be a conditional sale is, that the parties themselves who were competent to contract, in their own simple fashion made and declared it not to be such, by denominating the transaction a loan, as will appear by reference to the writing in which Reading, addressing the Gilbert company, said: "You to *lend* me a full set of Missouri Supreme Court Reports," etc. It is patent from these words that Reading proposed the loan and that the Gilbert company accepted this proposition and none other. Indeed, there are subsequent provisions therein about the sale of the books to Reading, but they do not treat of a sale *in praesenti.* It was a provision, whereby at some time in the future, *"upon completion of the work, the Supreme and Appeal Reports and Digests are to become my property, and I am to be charged on account of. my royalties with the regular price thereof."* The employment of this language clearly indicates the books were to remain the property of the Gilbert company. They

were loaned to Reading and he was not so much as to be charged therewith until he had completed the contemplated work on civil instructions and then, and not until then, were the books to become the property of Reading. And he, by his labors in the meantime, having created a fund by virtue of the royalties which were to accrue on account of his new book on civil instructions, and this fund, which was to pass through the hands of the Gilbert company first, who were to put his new book on the market and collect the royalties, was to be retained by it, or a sufficient amount thereof, as compensation for the books which had been theretofore loaned and were to become the property of Reading simultaneously with his completion of the work on civil instructions out of which the fund was to arise to pay the regular price. It is obvious that if the work on civil instructions was never completed, then the fund out of which the Gilbert Book Company's compensation was to come, would never arise and the books would remain as before, the property of the Gilbert company.

It is clear to this court, from what has been said, that this transaction between the Gilbert company and Reading was a mere loan or bailment of the books in suit. It was not such a loan as is contemplated by our statute (section 3401, R. S. 1899), as that deals with such pretended loans of property as shall have been in existence or "remained for a space of five years without demand," etc. This statute clearly has no application to this case nor to any other case where the facts disclose a mere temporary loan or bailment of property. [Oyler v. Renfro, 86 Mo. App. 321; Miller v. Bascom, 28 Mo. 352.]

The case then comes strictly within the law of an ordinary temporary loan or bailment of property, which is a common, everyday occurrence between citizens and is not regulated by statute, and in view of the fact that it is so common, so simple, so ordinary in the everyday affairs of men and that to attempt to regulate it

would be to embarrass civilized society beyond measure to no justifiable end, the Legislature has not even sought to provide any rule of conduct in connection therewith. It therefore results that we must apply the familiar principle that in such case of a loan or bailment, the relation of the bailee does not authorize or empower such bailee to convey a good title against the owner nor to charge the subject of bailment with his debts. And, therefore, Reading having no title to the books in question, other than as bailee, could convey none by his mortgage to the appellant, nor fix a charge thereon which would supersede the title of the bailor, or the true owner. [Hendricks v. Evans, 46 Mo. App. 313; Moore v. Simms, 47 Mo. App. 182; Oyler v. Renfro, 86 Mo. App. 321.]

The learned trial judge was right in finding the issues for respondent and the judgment is therefore affirmed. *Bland, P. J.,* concurs; *Goode, J.,* concurs in the result.