ISAAC L. VAN SANT, APPELLANT, v. AUSTIN-HAMILL-HOOVER LIVE STOCK COMMISSION COMPANY, RESPONDENT.[*]

Kansas City Court of Appeals. June 6, 1927.

*Corpus Juris-Cyc References: Agency, 2CJ, section 205, p. 564, n. p. 625, n. 47; p. 636, n. 75; Evidence, 22CJ, p. 1248, n. 29; p. 1274, n. 85.

*Brown, Douglas & Brown* and *Smith, Schall, Howell & Sheehan* for appellant.

*Myers & Snearly* and *Mytton & Parkinson* for respondent.

FRANK, C.—This is an action for damages for the alleged conversion of certain cattle on which plaintiff held a chattel mortgage. At the close of plaintiff's evidence the court gave an instruction in the nature of a demurrer to the evidence. Plaintiff took a nonsuit with leave to move to set the same aside. Plaintiff's motion to set aside the nonsuit was overruled and the case is lodged here by appeal.

The record reveals that plaintiff and one Edward H. Benton were copartners, transacting business under the firm name of Benton and Van Sant in the city of Omaha, Nebraska, and were engaged in the business of buying and selling live stock. The defendant is a corporation engaged in the live stock commission business at St. Joseph, Missouri. It receives, handles and sells live stock for shippers, collects the proceeds, pays the expenses and remits the net proceeds in accordance with the direction of the shipper.

On September 29, 1920, C. O. Hopkins, Sr., a farmer and stock raiser, of Atchison county, Missouri, purchased from the firm of Benton and Van Sant one hundred twenty-two (122) head of steers agreeing to pay therefore the sum of $11,373.31 and at the time executed to said firm his promissory note for that amount and a chattel mortgage on the steers purchased to secure the payment of said note. Hopkins took the steers to his home in Atchison county, Missouri, and the chattel mortgage was duly recorded in said county.

The steers were described in the mortgage as follows:

"One hundred twenty-two (122) head of three (3) year old steers mostly all dehorned, white faced, now averaging nine hundred sixty-six (966) pounds, and all branded thus—(with key brand) on the left or right side, except one head branded "R" on the left side.

"The above described live stock being all of the kind now owned by me, and are in my undisputed possession, free from all liens and encumbrances, Township No. 66, Range No. 41, in Atchison county, Missouri, being the live stock purchased this twenty-ninth day of September, 1920, of Benton and Van Sant."

Hopkins shipped eighty-two of the steers, together with other stock to respondent at St. Joseph, Missouri, for sale on the market, part of them being shipped on December 30, 1920, the remainder on January 12, 1921. Respondent sold both shipments for Hopkins, retained its commission and other expenses incident to the sale and remitted the proceeds to Hopkins. The remaining forty steers are not involved in this action. They were sold and the proceeds amounting to $3345.85 was paid to plaintiff and credited on the note.

The evidence shows that respondent had no actual knowledge that the steers were mortgaged to plaintiff and knew nothing about the arrangement between plaintiff and Hopkins relative to their sale.

Plaintiff had no notice that Hopkins intended to sell the cattle. He first learned of the sale about March 1, 1921. On March 15, 1921,

he went to Hopkins' home in Atchison county and demanded payment of the note secured by the mortgage. He remained there three or four days, during which time Hopkins borrowed $9000 from the Citizens National Bank of Atchison county, paid it to plaintiff and promised to pay the balance due on the note in a few days. At the direction of Hopkins $2969.27 of this amount was credited on a cattle note not involved in this suit. The remaining $6330.73 was credited on the note secured by the mortgage here involved, leaving a balance of $1749.17 due thereon.

Shortly after receiving the $9000 payment from Hopkins appellant went to respondent's office in the city of St. Joseph and obtained a copy of the account sales of the eighty-two steers. At that time he told a Mr. Hamill, one of respondent's managing officers, that he had a mortgage on these cattle and expected to look to respondent for the money. Hamill said to plaintiff, "I'll see what we can do for you, see if we can make arrangements to pay you."

The partnership of Benton and Van Sant was dissolved and the assets thereof divided between the partners in June, 1921. In the division of assets the note secured by the chattel mortgage on the steers in question, was assigned and delivered to plaintiff.

Respondent contends that plaintiff gave his consent for Hopkins to sell the cattle and thereby waived his lien. The only testimony on this subject is that given by plaintiff which is as follows:

"My arrangement with Mr. Hopkins was that he should take—that he should take these cattle home, put them on feed and when the cattle were ready for market according to his judgment he should ship these cattle when he got ready wherever he pleased and to whom he pleased, but he was to notify me before the cattle were shipped so that I could notify his commission firm that he shipped to the amount that I held against these cattle and they would send me draft direct. . . .

"Q. I believe you told us yesterday that after the note and mortgage were signed you told him to take these cattle home and feed them? A. Yes, sir .

"Q. And you told him to ship them when he pleased? A. Yes, sir.

"Q. And where he pleased? A. Yes, sir.

"Q. And to whom he pleased? A. Yes, sir.

"Q. And to notify you the name of the commission merchant—? A. Yes, to notify me before he shipped to whom he was going to ship them and I would notify his firm to send me the money.

"Q. You told him to ship them where he pleased? A. Yes, sir.

"Q. To whom he pleased? A. Yes, sir.

"Q. And when he pleased? A. Yes, sir.

"Q. How he pleased? A. Yes, sir.

"Q. Determine when was the proper time to ship them? A. Yes, sir—up to him to know that, know when they were right or ready to go.

"Q. You gave him that right that day, after the notes and mortgages were signed, when he was taking the cattle home—is that true? A. Yes, sir.

"Q. You said yes. Now I will ask what it was—you may state what condition you imposed upon his right to ship those cattle. A. My arrangements with him was when I sold him the cattle that he should take them and feed them and when he thought the cattle were ready to ship, ready to go, to ship them wherever he pleased, to whatever market he wanted to ship them, whenever he pleased and to whom he pleased, but to notify me when he was going to ship. That was my arrangements with Mr. Hopkins—or any other man under those circumstances."

Plaintiff contends that there is no evidence that the note and mortgage had been delivered before the oral agreement was made between plaintiff and the mortgagor relative to the sale of the property by the mortgagor, and for this reason evidence of such oral agreement is not sufficient to establish consent to sell, since it would vary .the terms of the chattel mortgage.

We agree with plaintiff that the law is well settled that oral agreements made prior to and contemporaneous with the execution of a written contract are merged in the. contract and cannot be used to contradict or vary the terms of such written contract. [Gorin Savings Bank v. Early, 260 S. W. 480, 482.] We are not, however, impressed with plaintiff's contention that there is no evidence showing that the note and mortgage were delivered before the oral contract in question was made. Plaintiff testified that he gave the mortgagor the right to ship the cattle when he pleased, to whom and how he pleased. As to when he gave the mortgagor this right, plaintiff said,

"Q. You gave him that right that day, after the notes and mortgages were signed, when he was taking the cattle home—is that true? A. Yes, sir."

This evidence unquestionably shows that plaintiff's consent to the sale of the mortgaged property by the mortgagor was given after the execution of the chattel mortgage.

The law is well settled that when a mortgagee of personal property after the execution of the mortgage, gives his consent, either verbal or written, to the mortgagor in possession of such property, to make an absolute sale of the property, the lien of the mortgage is waived, and the mortgagee cannot claim the property or its value from one who has purchased it with or without knowledge of the mortgage. [DeWitt v. Syfon, 211 S. W. 716, 719; Gorin Savings Bank v. Early, 260 S. W. 480, 482; Oklahoma Cattle & Loan Co. v. Wright et al., 219 Mo. App. 157, 160, 268 S. W. 714.]

Plaintiff contends, however, that the mortgagee's consent to the sale of the cattle was given on condition that the mortgagor notify the mortgagee of the intended sale before the cattle were shipped, and that such conditional consent did not amount to a waiver of the mortgage lien because the condition was not performed, by the mortgagor before he sold the cattle. In other words the contention is that the mortgagor's authority to sell was bottomed on a condition precedent, therefore the mortgagor's authority to sell did not vest until such condition precedent was performed.

We do not think the evidence supports this contention. Plaintiff's version of his arrangement with the mortgagor relative to the sale of these cattle is as follows:

"My arrangement with Mr. Hopkins was that he should take these cattle home, put them on feed and when the cattle were ready for market according to his judgment he should ship these cattle when he got ready, whenever he pleased and to whom he pleased, but he was to notify me before the cattle were shipped so that I could notify his commission firm that he shipped to the amount that I held against these cattle and they would send me draft direct."

This arrangement gave the mortgagor a general authority to sell. The condition, that plaintiff was to be notified before the cattle were shipped, does not affect the mortgagor's right to sell, but goes only to the collection and application of the proceeds of the sale. Plaintiff trusted the mortgagor to notify him before the cattle were shipped, when and where they would be sold, and a failure on his part so to do can affect no one except the plaintiff who trusted him.

In 11 Corpus Juris, page 625, section 393, it is said,

"When a mortgagee's consent to a sale by the mortgagor is given on condition, the condition must be performed in order to render the consent a waiver of the mortgage lien as between the parties, or as against the purchaser who was a party to the condition or had knowledge thereof . . . , but non-performance of a condition imposed on a mortgagor will not effect the rights of a purchaser who does not participate therein, or have knowledge thereof."

In Oklahoma Cattle Loan Co. v. Wright & Mason, 219 Mo. App. 157, 161, we said,

"While it has been held that where a mortgagee's consent to a sale of the mortgaged property by the mortgagor is given on condition, the condition must be performed in order to render the consent a waiver of the mortgage lien as between the parties or in favor of the purchaser who was a party to the condition or had knowledge thereof (Dodson v. Dedham, 61 Mo. App. 209; St. Louis Drug Co. v. Robinson, 81 Mo. App. 18), the failure of the mortgagor to comply with the condition will not affect the rights of a purchaser who does not participate therein or have knowledge thereof. [Tucker v. Mann, 124

Ga. 1003; New England Mortgage Security Co. v. Great Western Elevator Co. (S. D.), 71 N. W. 130; Flenniken v. Scruggs, 15 S. D. 38; Minneapolis Threshing Machine Co. v. Calhoun (S. D.), 159 N. W. 127; Rusk County Lumber Co. v. Meyer (Tex.), 126 S. W. 317.]''

The evidence in the case at bar shows that respondent had no actual knowledge of plaintiff's mortgage and had no knowledge of the arrangement made between plaintiff and the mortgagor relative to the sale of the cattle. In this situation, the failure of the mortgagor to comply with any condition imposed upon him relative to the sale of the cattle cannot affect the rights of respondent who had no knowledge of such conditions.

What we have already said necessitates an affirmance of the judgment, it is, therefore, unnecessary to discuss other points raised.

The judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.