**JIM KEEHN MOTORS, INC., Appellant,**

v.

**Owen G. BELL, Dorothy Bell, Owen G. Bell and Dorothy Bell, d/b/a Riebel's, Limerick Finance Company, a Corporation, Winston Hurt, d/b/a Limerick Finance Company, and Winston Hurt, Defendants,**

and

**LFC Plan, Inc., a Corporation, Intervenor, Respondent.**

No. 23642.

Kansas City Court of Appeals.

Missouri.

Feb. 4, 1963.

Falzone & Falzone, Moberly, Hale W. Brown, Kirkwood, for appellant.

Hulen & Hulen, Moberly, for respondent.

BROADDUS, Presiding Judge.

This is an action in replevin involving three new automobiles brought by the new-car dealer against the purchaser on the ground that the checks given in payment of the cars were drawn upon a bank account having insufficient funds. The action was also brought against other persons who might have been claiming a right to possession. Defendant LFC Plan, Inc., was permitted to intervene in the case, claiming the right to possession under a chattel mortgage. A jury was waived and the cause tried to the court resulting in a judgment in favor of intervenor LFC Plan, Inc., from which judgment plaintiff appeals.

Plaintiff-appellant is a new car dealer in Webster Groves, St. Louis County, Missouri. Defendant Dorothy Bell operated an automobile dealership at Moberly, Missouri, under the trade name Riebel's Motor Company.

On April 20, 1961, Dorothy Bell contacted the plaintiff and arranged for the purchase of three new automobiles for the price of $7598.22. At about 9 p. m. the same day, Owen G. Bell, her husband, went to plaintiff's place of business in St. Louis County, delivered to plaintiff three checks totalling $7598.22, took possession of the cars and obtained "all the papers that go with an automobile," including bills of sale, car invoices and certificates of origin. The three checks were each signed by Dorothy Bell, drawn on the account of Riebel's Motor Company, at the bank of Cairo, Missouri, and were dated April 21, 1961. The checks were deposited to plaintiff's account.

On April 22, 1961, Dorothy Bell called a representative of respondent LFC Plan, Inc., Curtis Sutton, and advised him that she had three cars she had just bought.

On April 24, 1961, at approximately 8 o'clock that morning Curtis Sutton went to Riebel Motor Company's place of business in Moberly to see that Riebel Motor Company was in possession of the subject au-

tomobiles which was a normal business practice. While there Mr. Sutton talked with defendant Owen G. Bell and verified the serial numbers of the automobiles and verified the certificates of origin. Mr. Sutton did not see defendant Dorothy Bell at that time and was advised by Mr. Bell that she was in Barnes Hospital in St. Louis.

Phyllis J. Fodor, a cashier working at LFC Plan, Inc.'s office in Harrisburg, Illinois, received a sight draft in the sum of $7598.22 drawn on respondent LFC Plan, Inc., by Riebel Motor Company on the Harrisburg Bank. Included in the sight draft envelope was a chattel mortgage and instructions concerning the preparation of the chattel mortgage from Riebel Motor Company. Receiving no instructions to the contrary Phyllis J. Fodor then issued a check to pay the sight draft, which resulted in the honoring of said sight draft, which in turn resulted in the $7598.22 being credited to Riebel Motor Company's account in the bank of Cairo. Thereupon Phyllis Fodor prepared a chattel mortgage and note and executed the same in behalf of Riebel Motor Company, the same being a chattel mortgage and note on the three automobiles, and dated it April 21, 1961, as is customary and in accordance with company policy and accepted business practice. Phyllis Fodor had a power of attorney in behalf of Dorothy Riebel Bell. As of this time, respondent LFC Plan, Inc. had no notice of any irregularities in the operation of Riebel Motor Company and defendant Riebel Motor Company's credit was good, and respondent LFC Plan, Inc., had never previously found Dorothy Bell to be dishonest.

On April 26, 1961, appellant was advised that the three checks delivered by Owen G. Bell had been dishonored. Winston Hurt, a representative of respondent LFC Plan, Inc., came to Moberly, and upon his arrival at Riebel Motor Company learned that Mrs. Bell was no longer there and took possession of a number of automobiles, including the subject automobiles and, with the consent of Owen G. Bell, directed that the cars be moved to another lot and put under

guard, advising his subordinate Curtis Sutton of these directions. Mr. Sutton employed a number of off-duty policemen to guard the motor vehicles. Subsequent to the removal of the automobiles appellant's president, Jim Keehn, telephoned Riebel Motor Company, talked with defendant Owen G. Bell, and was advised that he couldn't make the checks good, and to come and get his cars, at which point during the telephone conversation, Winston Hurt took the telephone and advised that he was Winston Hurt of LFC Plan, Inc. and that the place was "blown up", and that he was going to hold everything and would not surrender the cars to appellant.

On April 27, 1961, appellant filed suit, posted a bond and obtained possession of the automobiles by reason of a writ of replevin.

The three automobiles were never in the possession of appellant from the evening of April 20, 1961, until April 27, 1961, when delivered to it by the Sheriff of Randolph County.

At the conclusion of the evidence the cause was taken under advisement and thereafter, on December 12, 1961, the court made Findings of Fact and also filed the following conclusions of law:

"1. Defendant Owen G. Bell, defendant Limerick Finance Company, a corporation, defendant Winston Hurt doing business as Limerick Finance Company, and defendant Winston Hurt as an individual have never had at any time pertinent to this action any possession, right, title, or interest in or to any of the three automobiles described in plaintiff's petition.

"2. The transaction between plaintiff Jim Keehn Motors Inc., and defendant Dorothy Bell doing business as Riebel Motor Company, whereby plaintiff delivered possession of the three automobiles in question together with properly assigned certificates of origin and invoices to the agent of defendant

Dorothy Bell doing business as Riebel Motor Company and the delivery by the agent of defendant Dorothy Bell to the agent of plaintiff of three checks in the total sum of $7598.22 in payment for said automobiles, was a completed sale at the time of the transaction.

"3. That Phyllis Fodor was the duly appointed attorney in Fact of defendant Dorothy Bell doing business as Riebel Motor Company and as such had the authority under said Power of Attorney to execute the note and chattel mortgage and deliver same on behalf of defendant Dorothy Bell to the LFC Plan, Inc.

"4. Defendant LFC Plan, Inc., in good faith took the chattel mortgage and is an innocent purchaser for value.

"5. Defendant LFC Plan, Inc. lawfully took actual possession of the three automobiles in question under its chattel mortgage prior to any rescission or attempt to rescind by the plaintiff of the sale made by plaintiff to defendant Dorothy Bell doing business as Riebel Motor Company and such mortgage is valid as against plaintiff even though the chattel mortgage was not filed for record at the time plaintiff filed this action.

"6. Defendant LFC Plan, Inc. is entitled to the possession of said three automobiles as against plaintiff or at its election defendant LFC Plan, Inc. is entitled to recover the value of said automobiles from plaintiff as of the date of the taking of said vehicles by plaintiff."

Plaintiff contends that the sale of the automobiles to the Riebel Motor Company was a cash sale, and that the title did not pass to the purchaser because the purchase price was not paid. In support of its position plaintiff relies upon the case of Hickerson v. Con Frazier Buick Co., Mo.App., 264 S.W.2d 29, decided by this court. That

case is distinguishable from the instant case because there the rights of no third person were involved. This is pointed out in the recent case of Pashalian v. Big-4 Chevrolet Co., Mo.App., 348 S.W.2d 628, 636.

The trial court found, and the evidence supports that finding, that LFC Plan, Inc. in good faith took the chattel mortgage and was an innocent purchaser for value. Thus we have in this case two innocent parties, one of whom must bear the loss. As stated in the case of Goddard Grocery Co. v. Freedman, Mo.App., 127 S.W.2d 759:

"It is a general principle as regards traffic in personal property that where one of two innocent persons must suffer by the fraud of a third he who has put it in the power of the third to commit the fraud must suffer."

In the instant case, plaintiff had it within its power either to retain possession of the automobiles until the checks issued in payment therefor had cleared, or not execute the titles to the automobiles until the checks had been honored. It failed to do either, and thus put it in the power of the Riebel Motor Company to commit the fraud. Under these circumstances, plaintiff should bear the loss.

Appellant challenges the validity of the chattel mortgage in question because it was filed after suit was instituted. In taking this position appellant overlooks the rule announced in the cases of Jones v. Bank of Excelsior Springs, 201 Mo.App. 545, 213 S.W. 892, and Columbia Savings Bank v. Limerick, Mo.App., 216 S.W.2d 119, 123, that if a mortgagee takes possession of the property under the mortgage before creditors become lien creditors, it validates the mortgage as to such creditors, even though not recorded. Under the undisputed evidence in this case the LFC Plan, Inc. had possession of the automobiles the day Mr. Keehn called Mr. Bell from St. Louis, and at the same time talked to Mr.

Hurt, the representative of LFC Plan, Inc. It further appears from the evidence that at the time Mr. Keehn talked to Hurt he was informed that LFC Plan, Inc. had taken possession of the automobiles under a mortgage. Therefore, the question as to the time of the filing of the mortgage is immaterial, since the filing of the mortgage is for the purpose of giving notice of the existence of such lien, and Mr. Keehn, president of the plaintiff company, had actual notice of the mortgage before filing the replevin action, and was further advised that the three automobiles in question, together with other cars, were then in the possession of the LFC Plan, Inc.

The judgment was for the right party and should be affirmed. It is so ordered. All concur.