**MIDWESTERN MACHINERY COMPANY,**
**a corporation, Plaintiff-Appellant,**

**v.**

**G. H. PARSONS, Defendant-Respondent.**

**No. 8341.**

Springfield Court of Appeals.

Missouri.

Dec. 18, 1964.

Pinnell & Monroe, Monett, for plaintiff-appellant.

James A. Dunn, Carthage, for defendant-respondent.

STONE, Judge.

This is a court-tried replevin action, in which plaintiff Midwestern Machinery Company, a Minnesota corporation (hereinafter called Midwestern), appeals from an adverse judgment that defendant G. H. Parsons retain possession of a 24″ Bullard vertical turret lathe, Serial No. 15649, found to have been of the value of $2,000 at the time of trial.

In February 1962, Parsons leased a building in Carthage, Missouri, to Harrel Owens and financed him in the establishment of a machine shop. Pete Page, an independent machine tool dealer at Joplin, took Owens to Midwestern, a machine tool dealer at Minneapolis, and Midwestern sold to Owens (under his trade name of Ozark Metal Goods) several items, among them a used 24″ Bullard vertical lathe, Serial No. 8917 (hereinafter referred to as the *first lathe*). Payment for this (and other) machinery was made from funds advanced by Parsons, who shortly thereafter took from Owens a chattel mortgage (hereinafter referred to as the *old chattel mortgage*) covering "the entire machine shop," including the first lathe.

The first lathe was a "government surplus" machine which had been acquired by a Minnesota school and subsequently had been consigned to Midwestern for sale. Under applicable governmental regulations, state institutions in Minnesota had a prior

right to purchase this lathe if the Minnesota school disposed of it within a specified period; and, when a state reformatory bid on it, the State of Minnesota demanded its return. Thus, as witness O'Heron, Midwestern's secretary-treasurer, frankly admitted upon trial, "we got ourselves in a bind" and it became necessary for Midwestern to arrange for return of the first lathe.

Accordingly, O'Heron explained the situation to Owens over long distance and subsequently asked Page (the independent Joplin dealer) "to follow up" which he did by calling at Owens' shop and talking personally with both Owens and Parsons. At that time, an oral agreement was reached between Midwestern and Owens, in a long distance telephone conversation with Midwestern's home office, that Midwestern would repurchase the first lathe for $2,000 and would loan Owens another 24″ lathe while, pursuant to his request, Midwestern undertook to locate for him a larger 36″ lathe. Parsons did not participate in this telephone conversation and insisted that he was given no advance information that the first lathe was to be repurchased or that another lathe was to be loaned to Owens. However, Parsons admittedly (in the language of his brief) "released the original [first] lathe from his chattel mortgage * * *."

At a later date not fixed in the record more definitely than that it was early in June 1962, Midwestern picked up the first lathe and delivered to Owens' shop a 24″ Bullard vertical turret lathe, Serial No. 15649 (hereinafter referred to as the *second lathe*), which is the subject of this suit. On June 14, 1962, Midwestern issued its check for $2,000 payable to the sole order of "Ozark *Mfg.*" in payment of the repurchase price of the first lathe. Midwestern's O'Heron, who wrote the $2,000 check, then knew that the first lathe had been mortgaged, although it was O'Heron's "impression" that the Central National Bank held the note and mortgage. Received at Owens' office in his absence (so he said), the $2,000 check was deposited in his account in the Central National Bank of Carthage, and Parsons was not notified of its receipt and deposit. Owens' explanation, perhaps satisfying to the credulous and naive, was that "I never even thought anything about it."

Parsons, an automobile dealer in Carthage, was in Owens' shop frequently (Owens said "every day") and knew when the first lathe was removed and the second lathe was installed, but the record suggests no inquiry by Parsons as to ownership of the second lathe and no effort to procure a chattel mortgage covering it until August 30, 1962. On that date, Owens, his wife, his attorney, and Parsons met in the office of R. A. Evans, president of the Central National Bank. As Parsons explained upon trial, Owens "had bit off more than he could chew in real estate and equipment" and Parsons then (i. e., on August 30, 1962) refinanced his (Owens') indebtedness by taking a new note, in which the monthly payments were reduced "so he might survive," and a *new chattel mortgage* (hereinafter referred to as such) which purported to cover the listed machinery and equipment in Owens' shop, including the second lathe (misdescribed in the mortgage as a 30″ lathe). However, Owens' business did not survive and, by the first of October 1962, Parsons had taken possession of the mortgaged personalty. Institution of this action followed shortly on October 18, 1962.

The positive and undisputed evidence was that Owens did not purchase the second lathe but that it simply was loaned to him. Thus he was never vested with title to the second lathe and had no right to mortgage it. The general rule is that a mortgagee is charged with the duty to see that the mortgagor has good title to the property which he undertakes to mortgage,[1] and that a person cannot mortgage

1. Bank of Ionia v. Bank of Eldon, Mo. App., 365 S.W.2d 770, 773(4); Bank of

Kennett v. Clayton, 241 Mo.App. 487, 498, 245 S.W.2d 678, 684(10); Peper v.

property that he does not own so as to defeat the claim of the rightful owner, even though the mortgagee may act in good faith.[2] So recognizing, Parsons' pleaded defense, accepted by the trial court, was that Midwestern was estopped to assert its title to the second lathe and that he (Parsons) had a special property or interest therein sufficient to support his claim of right of possession.

 Parsons' argument on estoppel runs along the line that "by shipping the second lathe to Owens without attempting to contact Parsons to get his consent to the transfer of lathes, [Midwestern] clothed Owens with apparent ownership and title to the second lathe," that Midwestern thereby "put it in Owens' power to commit a fraud upon Parsons," and that Midwestern should be estopped to assert its title to the second lathe, under the broad equitable doctrine that where one of two innocent persons must suffer because of the fraud of a third party he who put it in the power of the third to commit the fraud should suffer.[3] But all of the cases upon which Parsons here relies involved motor vehicles; and, in each instance, the estopped owner either had delivered with the motor vehicle, or had placed the fraud-feasor in position to obtain, *documentary indicia customarily accepted as evidencing ownership.*[4]

 Mere possession and control of personalty is not sufficient to estop the real owner from asserting title against a person who has dealt with the one in possession on the faith of his apparent ownership;[5] and "application of the doctrine that '[w]henever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it' [citing cases] must be founded upon something more than the bare possession of personal property * * *." William J. Lemp Brewing Co. v. Mantz, 120 Md. 176, 87 A. 814, 817. See Seigal v. Warrick, Tex.Civ.App., 214 S.W. 2d 883, 885; annotation 7 A.L.R. 676, 677. Thus it is said that "[t]he owner of a chattel is not estopped to assert title to it by permitting another to use it in his business" [annotation 7 A.L.R. 676, 678]—a general principle which has been found acceptable and controlling in numerous cases collected in the cited annotation.

 Furthermore, "[i]t is an essential element of equitable estoppel that the person asserting the estoppel shall have changed his position for the worse in reliance upon *representations or conduct of the*

American Exchange Nat. Bank in St. Louis, Mo.App., 205 S.W.2d 215, 217, affirmed 357 Mo. 652, 210 S.W.2d 41; Goodman v. Nichols, 238 Mo.App. 802, 813, 188 S.W.2d 666, 671.

2. Peper, supra, 205 S.W.2d at 217; Goodman, supra, 188 S.W.2d at 671; Gilbert Book Co. v. Sheridan, 114 Mo.App. 332, 343, 89 S.W. 555, 558(5); 15 Am.Jur.2d, Chattel Mortgages, § 22, p. 217.

3. Jim Keehn Motors, Inc. v. Bell, Mo. App., 364 S.W.2d 629, 632(2); Pashalian v. Big-4 Chevrolet Co., Mo.App., 348 S. W.2d 628, 634(7); Wills v. Shepherd, 241 Mo.App. 102, 109, 231 S.W.2d 843, 847(2); Seward v. Evrard, 240 Mo.App. 893, 900, 222 S.W.2d 509, 513(2).

4. In Jim Keehn Motors, Inc., supra, 364 S.W.2d at 630, the owner (a new car dealer) delivered " 'all the papers that go with an automobile,' including bills of sale, car invoices and certificates of origin"; in Pashalian, supra, 348 S.W.2d at 631, the owner (a new car dealer) delivered "[t]he invoice, the application for Certificate of Title, the Manufacturer's Statement of Origin * * * together with the usual service policies"; and, in Seward, supra, 222 S.W.2d at 513–514, the owner (a used car dealer) "carelessly placed [the fraud-feasor] in a position where he could and did secure an Arkansas title regular upon its face."

5. Anthony v. Midwest Live Stock Commission Co., Mo., 260 S.W. 94, 97(2); 19 Am.Jur., Estoppel, § 68, p. 696. See Seward, supra, 222 S.W.2d at 513(3); Goodman, supra, 238 Mo.App. at 812, 188 S.W.2d at 671(4); Foster v. Modern Woodmen of America, 235 Mo.App. 386, 400, 138 S.W.2d 18, 26(9).

*person sought to be estopped."* [6] (Emphasis ours.) Parsons does not assert that Midwestern made any *representations*, and the only *conduct* of which he complains is that Midwestern repurchased the first lathe and then loaned the second lathe to Owens without theretofore notifying Parsons and obtaining his consent. But Parsons changed his position for the worse when he released the *first* lathe from the lien of the *old* chattel mortgage; and, since such change in position occurred *before* Midwestern repurchased the first lathe and *before* it loaned the second lathe to Owens, certainly it could not be found that, in so changing his position for the worse, Parsons relied upon *Midwestern's subsequent conduct*. Mickelberry's Food Products Co. v. Haeussermann, Mo., 247 S.W.2d 731, 739(10); Klaar v. Lemperis, Mo., 303 S.W.2d 55, 59(10); 31 C.J.S., Estoppel, § 71a at 432. He who asserts an estoppel has the burden of proving it,[7] and every essential element of such estoppel must be established by clear and satisfactory evidence.[8] Defendant Parsons has not done so, and the judgment for him predicated on the pleaded defense that Midwestern is estopped to assert its title to the second lathe may not stand.

■■■ Whether the case should be reversed outright or should be reversed and remanded for further proceedings has been a subject of concern. True, Parsons released the first lathe from the lien of the old chattel mortgage upon the condition stated by him to Owens in this language: "If you [Owens] can get that machine [the first lathe] replaced with another machine that is satisfactory with you, that we can put on the mortgage in place of the ones (sic) on there, it will be fine with me"—in substance and effect, upon condition that mortgagor Owens would give him (Parsons) a mortgage upon another lathe to be received in exchange. But when Parsons consented to return of the first lathe to Midwestern, he waived his lien under the old chattel mortgage and thereafter was required to look to mortgagor Owens personally for payment of the mortgage debt. Moffett Bros. & Andrews Com'n. Co. v. Kent, Mo., 5 S.W.2d 395, 400(1); Rogers v. Davis, 194 Mo.App. 378, 184 S.W. 151, 154–155(5). See Stockyards Nat. Bank v. B. Harris Wool Co., 316 Mo. 426, 289 S.W. 623, 632(1). Furthermore, Parsons could not have claimed the first lathe or its value from Midwestern, unless the latter had been a party to, or had had knowledge of, the condition upon which the first lathe had been released. Oklahoma Cattle Loan Co. v. Wright, 219 Mo.App. 157, 268 S.W. 712, 714(2); Van Sant v. Austin-Hamill-Hoover Live Stock Com'n. Co., 221 Mo.App. 1096, 1100, 295 S.W. 506, 508; Adamson v. Fogelstrom, 221 Mo.App. 1243, 300 S.W. 841, 845(10, 11). And the record before us neither presents any such claim by Parsons nor demonstrates that Midwestern was a party to, or had knowledge of, the above-stated condition.

■■■ On the other hand, we would not be misunderstood as placing the stamp of judicial approval upon the conduct of either Midwestern or Owens. And although the transcript before us provokes the frank observation that we seriously doubt whether

6. Emery v. Brown Shoe Co., Mo., 287 S. W.2d 761, 767(5); Sutorius v. Mayor, 350 Mo. 1235, 1254, 170 S.W.2d 387, 397 (17); Klaar v. Lemperis, Mo., 303 S.W. 2d 55, 59. See Wilkinson v. Lieberman, 327 Mo. 420, 427, 37 S.W.2d 533, 536(6); First Nat. Bank of Shamrock, Tex. v. Witherspoon Livestock Com'n. Co., 230 Mo.App. 285, 301, 90 S.W.2d 453, 463 (10).

7. Emery, supra, 287 S.W.2d at 767(4); Pike v. Menz, 358 Mo. 1035, 218 S.W. 2d 575, 578(3); Sutorius, supra, 170

S.W.2d at 397(19); Linville v. Ripley, 347 Mo. 95, 146 S.W.2d 581, 583(7).

8. John Hancock Mut. Life Ins. Co. v. Dawson, Mo.App., 278 S.W.2d 57, 61(7); State ex rel., Richards v. Fidelity & Casualty Co. of New York, Mo.App., 82 S.W. 2d 123, 128(6); 31 C.J.S., Estoppel, § 162a, p. 773. See Hanna v. Nowell, Mo. App., 330 S.W.2d 595, 602(8); National Match Co. v. Empire Storage & Ice Co., 227 Mo.App. 1115, 58 S.W.2d 797, 799 (10), certiorari denied 290 U.S. 668, 54 S.Ct. 88, 78 L.Ed. 577.

Parsons properly can plead and prove facts constituting a valid legal defense to Midwestern's cause of action in replevin for the second lathe, the judicial quest for the doing of substantial justice has moved us to the uncertain conclusion that, since we are unable to say with assurance that the facts have been developed fully, defendant Parsons should not be foreclosed from appropriate amendment of his pleading, if he be so advised, and from retrial on the merits.

It is, therefore, the judgment of this court (a) that the judgment of the circuit court for defendant Parsons upon plaintiff Midwestern's petition in replevin be set aside and for naught held, (b) that this cause be remanded to the circuit court for further proceedings not inconsistent with this opinion and for retrial upon the merits, and (c) that the costs of this appeal be taxed against defendant Parsons.

RUARK, P. J., and HOGAN, J., concur.