ADOLPH KLEBBA, RESPONDENT, v. HENRY F. STRUEMPF, APPELLANT.*

Kansas City Court of Appeals.   January 6, 1930.

194

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2853, p. 879, n. 88; Assignments, 5CJ, section 135, p. 953, n. 36; Equity, 21CJ, section 179, p. 193, n. 96; section 210, p. 210, n. 24; section 225, p. 231, n. 84; Estoppel, 21CJ, section 176, p. 1170, n. 67; p. 1172, n. 68; Fraudulent Conveyances, 27CJ, section 63, p. 439, n. 33; Life Insurance, 37CJ, section 130, p. 426, n. 23.

*John P. Peters* and *E. M. Zevely* for respondent.

*Irwin & Bushman* for appellant.

BARNETT, C.—This is a suit in equity whereby plaintiff sought a decree declaring defendant to be a trustee for the benefit of plaintiff of the proceeds of four policies of insurance so far as those proceeds were necessary to satisfy a note with interest thereon. One Jake Struempf held four policies of insurance in an insurance company doing business on the assessment plan, under which policies $2000 was due at the time of his death. The policies had no cash, loan, or surrender value. The assured had executed a note to plaintiff and on November 28, 1927, he executed and delivered to the plaintiff a written assignment which recited that he pledged to the plaintiff a certain life insurance policy in the Capital Mutual Insurance Association of Jefferson City for the sum of $4000 on the life of Jake Struempf, said policy being dated March, 1926, and payable to his estate. It was recited that the pledge was made to secure to plaintiff the payment of said note, the amount of which he consented should be a lien upon his policy if still unpaid "and

will be payable out of the proceeds of the said policy if still unpaid upon the death of said Jake Struempf with six per cent interest per annum compounded." The plaintiff did not take possession of any policy and did not notify the insurance company of the assignment.

The evidence showed that in the fall of 1927 Jake Struempf went to the house of the defendant, his brother. At that time he was fifty-one years old, one leg was crippled by erysipelas and he was blind in one eye. The defendant testified, without objection, that at that time the assured told his brother that his leg hurt him so badly that he could not do much farm work, and if he couldn't get a home anywhere he would have to go to the poorhouse. The assured had been doing farm work previous to this time. The brother said: "No, I won't let you go to the poorhouse. If you want a home I will give you a room and you can come there anytime you have no work and make your home there." After the assured had stayed at his brother's house for about three weeks he told his brother that if he would give assured a home he would make his brother beneficiary of the insurance. To this the defendant agreed. Then one day the defendant went to the assured and said: "I am going to Jef, if you want me to, I'll change those policies." The assured agreed. Defendant took the policies to the insurance agent and requested the change in beneficiary. The agent gave him a written request for the change in beneficiary to be signed by the assured. This was taken back and the assured signed it, in the presence of a witness; at which time, according to the testimony of the witness to the direction to change the beneficiary, defendant, in the presence of the assured, said: "That was for his home." The assured did not say anything about the reason for the assignment. The evidence showed that after this assignment was made four premiums or assessments came due, all of which were paid by the defendant, amounting to $15.96. Defendant testified that he had no knowledge of the assignment to plaintiff and that he would not have offered his brother a home and would not have given him a home had he known there was any claim upon the policies; and then said: "Well, I had to have a little something to pay for it."

In the following spring a pimple appeared upon the assured's neck. He became sick and sat behind the stove in a rocking chair for about two weeks. The pimple developed into a carbuncle and he was then taken to a hospital, and after remaining there for four days he died on May 18, 1928. Defendant testified that he paid the doctor's bill, the hospital bill, the nurse's bill and the funeral expenses. The plaintiff testified that when the assured was in the hospital he met the defendant and asked him, "Is Jake worse?" The defendant said that he was and that he had received a phone call to come back to the hospital; that the defendant then asked

the plaintiff whether his brother had paid anything on his debt: that the plaintiff said "No" and defendant asked: "Hasn't he paid any interest?" Plaintiff said: "No, he hasn't paid no interest, I expect he kept up the payments on his policy;" that defendant said "Yes," and that was all that was said. Defendant testified that he had no conversation about the debt until after his brother was buried.

The insurance company, disregarding the assignment to the plaintiff, paid the sum of $2000 to the defendant who was named as beneficiary in the policies.

The trial court entered a decree for plaintiff which contained a finding of fact that the assured on the 28th day of November, 1927, without the knowledge or consent of the plaintiff and without consideration, changed the beneficiary in his benefit certificates from that of his estate to that of Henry F. Struempf, brother, and that out of the $2000 received by the defendant as the proceeds of the insurance he had paid the expenses of the last illness and funeral of the assured in the sum of approximately $300. A motion for new trial was filed and overruled and defendant has appealed.

## OPINION.

The rule for the protection of assignees in good faith and for value which was recognized by the law merchant and which has been preserved by our Negotiable Instruments Act, and which is the spirit of the recording acts, was always recognized by courts of equity and applied to transaction that had nothing to do with negotiable instruments or the conveyance of real estate. Thus, under the maxium, "equity aids the vigilant, not those who sleep on on their rights," it has been held that a court of equity will protect one who by superior diligence has obtained a legal advantage, and will deny relief to one whose damage was created by his own neglect. [21 C. J. 193.] Under the maxim, "between equal equities the first in order of time shall prevail," it has been held that it is only *where equities are equal* that the element of time becomes material and decisive as to priority of rights. Where the respective equities are not equal, the stronger or more meritorious one will prevail, regardless of which accrued first in order of time. [21 C. J. 210.] The doctrine of laches will prevent relief to one who has stood idly by with knowledge of his rights and allowed the situation to so change that it would be an injustice to others to grant the relief that was tardily sought. It was early established that where one of two innocent persons must suffer the burden must be borne by him, whose neglect created the situation. Equity will not hold to be good that which is insufficient at law if, to do so, the consequences of a man's negligence must be visited upon another.

The respondent claims that the assignment in this case was a good equitable assignment, even though no notice of the assignment was given to the insurance company, and even though the plaintiff neglected to take possession of the policies and neglected to have the beneficiary changed therein, and neglected to have the assignment endorsed on the policies, and even though the written assignment defectively described the policies. We agree with this contention. None of these acts of negligence could have prejudiced the assured; and as against him the assignment was perfectly valid. But it has been held in this State that the equity of a subsequent assignee of a chose in action who first gives notice to the debtor is superior to that of a prior assignee. [Murdock and Dickson v. Finney, 21 Mo. 138; Richards v. Griggs, 16 Mo. 416; Hauser v. Richardson, 90 Mo. App. 134.] The Supreme Court has said that the reason for this rule is that by the failure to give notice the first assignee has enabled the owner of the chose in action to commit a fraud by making another sale. [Murdock and Dickson v. Finney, and Richards v. Griggs, supra.] The rule does not apply if the subsequent assignee had notice of the first assignment. [Bank of Moberly v. Meals, 5 S. W. (2d) 1113.] We are of the opinion that the rule does not apply as to one who does not give any consideration for the subsequent assignment, because in such case no fraud has been perpetrated on the subsequent assignee. [Howe v. Hagan, 97 N. Y. S. 86.] The rule as to the assignment of a chose in action which is not evidenced by any written instrument applies *a fortiori* when the obligation is evidenced by a written instrument and there is no delivery of the instrument itself nor any endorsement of the assignment thereon. In such case the fact that the original holder still has the instrument in his possession is strong evidence that no prior assignment has been made. We therefore hold that the plaintiff cannot recover in this case unless he has sustained the allegation in his petition that the change of beneficiary was without consideration.

The trial court held that the assured changed the beneficiary of his policies of insurance without consideration. He saw the witnesses, and great deference must be accorded to his finding of fact. However, the only evidence in the record upon the question of consideration was the testimony of the defendant and the testimony of the man who witnessed the assured's written request for a change of beneficiary. That evidence was clear, reasonable, and uncontradicted. It was established by documentary evidence that defendant paid all the premiums after he was designated as beneficiary. It is true that the assured lived at his brother's house for a period of about three weeks before it was agreed that defendant would furnish a home to the assured and in consideration therefor assured would make defendant the beneficiary of his insurance. However,

at that time the defendant was under no obligation to continue to support his brother in whole or in part. If the assured did not see fit to accept charity, he was not obliged to do so; and the parties were still competent to enter into a contract whereby the defendant obligated himself to furnish a home for the assured. Furthermore, we think that the fact that the defendant paid all the premiums or assessments on the policies of insurance as they became due upon the faith of the fact that he had been designated as beneficiary was in and of itself sufficient consideration to support the contract as against the prior secret assignment. The policies had no surrender value. They were therefore utterly worthless unless the premiums should be paid in the future so long as the assured should live. At the time that the change in the beneficiary was made, the plaintiff had no lien on anything. The assured could not be compelled to continue to pay the premiums or assessments. By reason of the fact that the plaintiff's assignment was kept secret, defendant was induced to pay and did pay all sums necessary to keep the policies alive. By reason of the fact that the assured died shortly after designating a change in the beneficiary, the amount paid out by the defendant as premiums or assessments was small; but any consideration whatsoever is sufficient to support the transaction unless it was tainted with fraud, bad faith, or unfair dealing.

Furthermore, we are unable to defer to the finding of the trial court that the change of the beneficiary was made without consideration, for the reason that the undisputed evidence shows that the defendant did furnish the assured a home as long as he lived. That, too, turned out to be a light burden because of the fact that the assured did not live long after he designated his brother as beneficiary. However, defendant entered into a contract to furnish a home to his brother at a time when it could not be known how long the assured would live, nor whether defendant would survive him. Under the terms of the contract it was possible that defendant would furnish a home for his brother for a great many years and then predecease his brother and thus receive nothing for his services. The contract was very advantageous to the assured because he procured a home for life without paying out any money. If we should hold that the contract was without consideration, or was based upon a consideration so grossly inadequate as to be trivial because subsequent events only made it necessary for a party to perform a small amount of service under the terms of the contract, then it would follow that a life insurance company would not have to pay a loss if the assured came to his death shortly after the policy was written, and that a client would not have to pay a contingent fee if his lawsuit was settled shortly after he retained his attorney.

Respondent suggests that the change of beneficiary was fraudulent as to creditors, because the assured was insolvent. We are aware of no statute that prevented the assured from changing the beneficiary in his policies of life insurance. On the contrary, Section 6162, Revised Statutes 1919, provides that the proceeds of insurance policies issued by companies doing business on the assessment plan shall not be liable to attachment or other process and shall not be seized, taken, appropriated, or applied by any legal or equitable process, nor by operation of law, to pay any debt or liability of a policy or certificate holder, or any beneficiary named in a policy or certificate. By virtue of this provision the defendant would have had a right to contract that he be made the beneficiary, even if he had known that his brother was insolvent, and even if the policies had had a surrender value at the time. But the policies had to surrender value, which is another reason why the contract was not void as against creditors.

The decree should be reversed, and the cause remanded with directions to the trial court to dismiss the bill for want of equity. The commissioner so recommends. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is adopted by the court. The decree is reversed and the cause remanded with directions to the trial court to dismiss the bill for want of equity. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.