H. L. Siegel for Use of American Glass Company and Hyman J. Rosenberg, Appellees, v. Liberty Trust & Savings Bank, Garnishee. First National Bank of Chicago, Appellant.

Gen. No. 36,461.

Opinion filed October 10, 1933.

NAT M. KAHN, for appellant.

HENRY A. KALCHEIM, for appellee Hyman J. Rosenberg; ABRAHAM MILLER, of counsel.

HERMAN WALDMAN, for appellee American Glass Company; MAURICE WASHER, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In a garnishment proceeding, commenced April 24, 1931, in which two claimants of the fund intervened,

there was a trial of the issues without a jury in September, 1932, resulting in the court finding in substance as follows: That there is a fund in the hands of the garnishee (hereinafter called the Liberty Bank) as shown by its additional answer, in the sum of $2,920.03; that of this fund the beneficial plaintiff (American Glass Co.) is entitled to $1,360.50; and that Hyman J. Rosenberg, intervening claimant, is entitled to the balance of the fund, or $1,559.53. On September 9, 1932, judgments were entered upon the findings against the garnishee and in favor of the beneficial plaintiff and said Rosenberg, and a judgment for costs was entered against the First National Bank (hereinafter called the First Nat. Bank), the other intervening claimant. The present appeal by the First Nat. Bank followed.

On March 3, 1931, the American Glass Co. recovered a judgment against Siegel for $1,360.50, and, execution on the judgment having been returned "no property found," the present garnishment proceeding was commenced by the filing of an affidavit and the usual interrogatories. The garnishment writ was served on the Liberty Bank on April 25, 1931, and on April 27, it filed its answer, in substance that neither on the date of the service of the writ nor since did it have in its possession or control moneys, credits, rights, etc., belonging to Siegel.

On November 17, 1931 (additional interrogatories having been filed), the Liberty Bank filed an amended answer to interrogatories, Nos. 12 and 13, as follows:

"No. 12. Said garnishee, further answering, says that it has made the following payments *out of the one-tenth beneficial interest of H. L. Siegel in trust No. 770,* which said one-tenth interest has been assigned by said Siegel, under date of March 20, 1930, to the Foreman-State National Bank (hereinafter called the Foreman Bank):

| July 10, 1930,—Foreman Bank, assignee of Siegel, | | | | | $1,000 |
|---|---|---|---|---|---|
| Sept. 4, 1930, | " | " | " | " | " 1,000 |
| Oct. 15, 1930, | " | " | " | " | " 1,000 |
| Dec. 4, 1930, | " | " | " | " | " 200 |
| Dec. 19, 1930, | " | " | " | " | " 400 |
| Jan. 30, 1931, | " | " | " | " | " 1,000 |
| Mar. 5, 1931, | " | " | " | " | " 403.35 |
| May 8, 1931, | " | " | " | " | " 507.15 |

"And further that it has on hand the sum of $2,310.97, which amount has accumulated from the date of service of the above writ to the present date, and which funds are the property of the - Foreman Bank, assignee of Siegel.

"No. 13. Said garnishee, further answering, says that it has on hand in the above trust account at the present time contracts for the purchase of real estate, on which one-tenth of the present unpaid balance, due to the Foreman Bank, assignee of Siegel, is the sum of $36,673.51."

It will be noted in the above tabulation of payments, made by the Liberty Bank to the Foreman Bank, that the last payment of $507.15, on May 8, 1931, was made *after* the service of the garnishment writ.

On January 19, 1932, by order of court, the First Nat. Bank filed its intervening petition in the cause, in which it is alleged in substance that on March 19, 1930, Siegel executed and delivered a certain written assignment, by which he conveyed to the Foreman Bank, *"as security for a loan of $35,000,* all of his right, title and interest in and to a certain trust, wherein the Liberty Bank was trustee under a trust agreement dated January 22, 1926, known as its Trust No. 770"; that in the assignment it is provided that the same shall be held "unto the Foreman Bank, *its successors and assigns,* as collateral security as aforesaid, and subject to all the rights, powers and privileges granted to said Bank under the terms of said collateral note,

*or any extensions or renewals thereof"*; that "on May 9, 1931, Siegel executed a renewal note in favor of the Foreman Bank in the sum of $32,373.88, due June 10, 1931, with interest, which said note was secured by said assignment of Siegel's beneficial interest under the Liberty Bank's Trust No. 770"; that the note was thereafter indorsed by the Foreman Bank over to petitioner, and at the same time the Foreman Bank in writing assigned to petitioner the Siegel assignment; that the note was not paid by Siegel or by anyone in his behalf; that there is now due to petitioner on the note the sum of $32,373.88, together with interest; that it was provided in Siegel's assignment to the Foreman Bank that *"one-half* of the moneys received thereunder shall be retained to apply on the aforesaid indebtedness (of Siegel to the Foreman Bank), and *the remaining one-half* shall be paid to said Siegel *so long as he is not in default in the performance of any of his obligations"* (to the Foreman Bank); that on June 11, 1931, Siegel "was in default under said note, so executed by him and secured by said assignment," and that accordingly petitioner, as assignee of the Foreman Bank, notified Siegel that in accordance with the terms of said written assignment, "it would apply the *entire* amount received from the Liberty Bank under said assignment to the indebtedness of said Siegel as evidenced by said note." The petition prayed for the entry of an order "finding the issues in favor of petitioner with reference to the interest of said Siegel in the afore-described trust," etc.

On the trial the assignment to the Foreman Bank, dated March 19, 1930, and signed and sealed by Siegel, was introduced in evidence by the beneficial plaintiff (American Glass Co.), and, for convenience the material parts of the assignment are here set forth, as follows:

Whereas, the undersigned, H. L. Siegel, desires to borrow the sum of $35,000 from the Foreman Bank, to be evidenced by his principal collateral note of even date herewith due four months after date, and said bank is willing to loan him said sum "provided the payment thereof and of all sums which may hereafter be loaned by the bank to the undersigned shall be secured as hereinafter set forth," and

Whereas, the Liberty Bank, as trustee under a trust agreement dated January 22, 1926, and known as trust No. 770, holds title to the real estate described in said trust agreement, viz. (real estate described), "for the benefit of the beneficiaries therein mentioned,—the interest of the undersigned under said trust agreement, and in and to said property, being an undivided 1/10th beneficial interest."

Therefore, in consideration that the Foreman Bank has simultaneously herewith loaned to the undersigned the sum of $35,000, evidenced by his principal collateral note of even date herewith, due 4 months after date, and to secure the payment of said note "and any extensions or renewals thereof," the undersigned, H. L. Siegel, does hereby sell, assign, transfer, convey and deliver unto the Foreman Bank, "its successors and assigns," *all* his right, title and interest "in and to and under said trust agreement above described and in and to the land and property held by the trustee thereunder, and his beneficial interest therein."

"The undersigned further covenants and agrees that any and all money or property due or to become due to him, or to which he is or may be entitled, by reason of his 1/10th beneficial interest in the trust agreement above described, and the property held thereunder by said trustee, shall be paid and delivered, and the undersigned authorizes and directs said Liberty Bank to pay and deliver the same, to said Foreman Bank. *One-half* (1/2) of all of such moneys re-

ceived by said Foreman Bank from said Liberty Bank as trustee . . . *shall be applied* by said Foreman Bank towards the payment of the obligation of the undersigned to it, *including said $35,000 note* above described, or any notes evidencing the extension or renewal of said sum or any part thereof, *and the remaining one-half (1/2) thereof shall, so long as the undersigned is not in default in the performance* of any of his obligations to said bank, be paid to the undersigned.''

On the same sheet of paper, and immediately below Siegel's signature, is the signed statement of the Liberty Bank, dated March 20, 1930, that it has received a copy of said written assignment, that it will hold the interest of Siegel under said trust agreement for the benefit of the Foreman Bank, as assignee, and that it will pay and deliver to the Foreman Bank, as such assignee, all of the moneys and properties to which Siegel would have been entitled had said assignment not been made. And the Liberty Bank ''certifies'' that with the exception of the above assignment it has not received any notice of any other assignment, transfer or pledge of the interest of Siegel under said trust agreement, and that Siegel at the date hereof is the owner of an undivided one-tenth beneficial interest under said trust agreement.

On May 17, 1932, before the trial, the court ordered that leave be given to Hyman J. Rosenberg to file an intervening petition *''nunc pro tunc* as of April 30, 1932,''* and such petition was filed, sworn to by Rosenberg under date of May 17, 1932. In the petition Rosenberg alleges that ''on April 29, 1932,'' Siegel ''made the following assignment'': (The assignment, dated April 29, 1932, signed and sealed by Siegel, is set out in full, and is in substance as follows):

That Siegel, in consideration of $10 and other good and valuable considerations paid to him by Rosenberg, hereby sells, assigns and transfers to Rosenberg *''all*

*my right, title and interest* in, to and under, and any and all sums of money now due or to become due to me from Foreman Bank, or its assigns or assignees, under and by virtue of, the following assignment'': (Here is set out in full the said assignment of Siegel to the Foreman Bank, dated March 19, 1930, as above mentioned in this opinion).

In his petition Rosenberg further alleges that ''he is informed and believes the fact to be'' that the First Nat. Bank, an intervening petitioner herein, and the Liberty Bank as trustee, garnishee herein, have in their possession, custody or control, divers sums of money belonging to Siegel, and that petitioner, as assignee of Siegel, is entitled to said moneys, which ''are due to said Siegel out of an assignment heretofore made to the First Nat. Bank as set forth above.'' The prayer of the petition is that the court may enter an order ''setting aside such sums of money, now in the possession or control of the First Nat. Bank and/or the Liberty Bank, to Hyman J. Rosenberg, as assignee of said Siegel.''

On July 1, 1932, the Liberty Bank (garnishee) filed answers to certain additional interrogatories propounded by the American Glass Co. The gist of the answers is that the *total* amount collected by the Liberty Bank, and then in its hands, ''as the proceeds of the 1/10th beneficial interest of said Siegel in said Trust No. 770,'' is the sum of $2,920.03.

On the trial Siegel and one other witness testified for the beneficial plaintiff (American Glass Co.); Siegel also gave certain testimony as a witness for Rosenberg; and Otto J. Hansa, a vice president of the First Nat. Bank, and formerly a vice president of the Foreman Bank, testified for the First Nat. Bank. Considerable documentary evidence was introduced. Rosenberg, intervening petitioner, did not take the stand in his own behalf. From all the evidence the following facts in substance appeared:

Prior to March 19, 1930, Siegel owed the Foreman Bank the sum of $14,000. Siegel also had guaranteed the payment of an additional indebtedness of $14,000, owing to the bank by the Independent Auto Sales Company, of which he was an officer. Siegel requested the bank to loan him personally an additional sum of $7,000. After negotiations the bank agreed to do so, *provided* he would assume the indebtedness of the independent Auto Sales Company and execute a new note for the entire indebtedness ($35,000), and *provided further* he would assign to the bank as security for said indebtedness his one-tenth beneficial interest in said Trust No. 770; Siegel consented and on March 19, 1930, received the additional $7,000, delivered his $35,000 note, due in four months, and executed and delivered to the bank said written assignment above set forth. On the following day the Liberty Bank, as trustee, was notified of the assignment and consented thereto in writing as above set forth. Thereafter and prior to April 25, 1931 (the date of the service of the garnishment writ), the Liberty Bank (as shown in its amended answer as above) made seven payments, out of Siegel's beneficial interest, to the Foreman Bank. On May 8, 1931 (*after* the service of the garnishment writ), the Liberty Bank made an additional payment to the Foreman Bank of $507.15, out of said beneficial interest. All eight of these payments were made by checks of the Liberty Bank, payable to the order of the Foreman Bank and Siegel *jointly*. These checks were so drawn as a safeguard to prevent Siegel from questioning in the future the payments made out of his beneficial interest. And it appears that as a rule Siegel personally collected these checks, indorsed them and delivered them to the Foreman Bank. When in each case the amount of the check was received by the Foreman Bank, one-half was credited on Siegel's indebtedness to the Foreman Bank as evidenced by his

$35,000 note (or renewal note), and *the other half to Siegel* on his personal checking account in the Foreman Bank. This was done in compliance with the terms of Siegel's assignment, as above stated, ''so long as the undersigned (Siegel) is not in default in the performance of any of his obligations to said bank.'' When the payment of March 5, 1931, in the amount of $403.35, was made by the Liberty Bank, the usual procedure was followed, and Siegel's indebtedness to the Foreman Bank (as evidenced by his then outstanding renewed note, due on April 10, 1931) was credited by *one-half* of said payment, and the *other half* was credited to Siegel's personal checking account, as he was not then in default. Thereafter Siegel's note to the Foreman Bank, due on April 10, 1931, was extended to May 9, 1931. In the meantime, on April 25, 1931, the garnishment writ was served on the Liberty Bank but, nevertheless, the Liberty Bank issued its check of May 8, 1931 for $507.15, payable to the order of Siegel and the Foreman Bank jointly, and delivered it to Siegel, and he in turn indorsed and delivered it to the Foreman Bank, but no part of the amount of the check was credited to Siegel's checking account, nor did he otherwise receive any part. About this time, according to the testimony of Otto J. Hansa, a witness for the First Nat. Bank, Hansa had conversations with Siegel. Hansa testified:

''I told Siegel I desired to have his note paid (the note maturing on May 9, 1931) and that there would be no further renewals; he pleaded for another extension, saying that he felt reasonably sure he could 'put over' a certain pending deal within 30 days, whereby he could pay the entire note; therefore, I granted him another 30 days' renewal but I told him, in view of garnishments coming against his account and his affairs being in such shape, that I would not further share with him any payments that might be received from

the proceeds of this trust but would appropriate the *entire amount* of the checks. . . . We renewed the note to June 10th. . . . When this renewed note matured I had another conversation with Siegel at the First National Bank. . . . I demanded payment of it, but no part of it has ever been paid.''

This collateral renewed note was introduced in evidence by the First Nat. Bank. It is for $32,373.88, signed by Siegel, payable to the order of the Foreman Bank on June 10, 1931, and as security for its payment it is therein stated (as was stated in all the similar notes signed by Siegel and which at the maturities were replaced by renewals) that ''the undersigned (Siegel) has pledged, transferred and delivered to said bank the following property, viz., Assignment of Beneficial Interest Under Liberty Bank Trust No. 770.''

Siegel, when called as a witness of the American Glass Co., testified that the Foreman Bank ''went over'' to the First Nat. Bank about the time the garnishment proceeding was started; that early in May, 1931, he had several conversations with Hansa at the Foreman Bank concerning his note maturing on May 9th; that at one of these conversations he told Hansa that he had received notice from the Liberty Bank that the American Glass Co. ''had attached mine share,—the 1/10th I have in the Liberty Bank,'' and that Hansa replied: ''If that is the case, *no use signing a new note;* if you *show in default, they* will not get this money, and after *we* get the money in here *we* will *give you half* as I agreed with you.'' It will be noticed that this particular testimony of Siegel is contradicted by that of Hansa, who at first refused to extend Siegel's note which was due on May 9th, but afterward did extend it to June 10th. And Siegel's testimony is further contradicted by the fact of his *signing* the extension note maturing on June 10th. Siegel further testified in substance:

About a month after the Foreman Bank "went over" to the First Nat. Bank, I talked with Hansa in the offices of the latter named bank and Hansa introduced me to Mr. Kiddoo of the latter named bank. Hansa explained to Kiddoo "about the assignment and so on." And Hansa said to Kiddoo: "I suggested *no use signing a new note;* as long as a new note is not signed there is a *showing of default* and the American Glass Co. can't get the money." And Kiddoo said: "I think it is all right on that one." And Hansa "tells me that after the garnishment is taken off you get your half the way I agreed to, and make a new note."

Siegel further testified in substance:

I once went to see Kiddoo with the attorney for the American Glass Co.; I told Kiddoo that, as long as I got a half coming on this here, I would appreciate *his paying my half to the Glass Co.,* because its attorney is going to put me in bankruptcy and I would like its claim paid with the half that is coming to me; Kiddoo called up his attorney who was upstairs, but the attorney said "nothing doing."

This testimony of Siegel, as to his desire to have the claim of the American Glass Co. paid, is also contradictory to his former testimony as to his getting his "half" notwithstanding the pending garnishment proceeding. He was also called as a witness for Rosenberg and testified as to how he came to execute the assignment to Rosenberg on April 29, 1932, as follows:

"I owed some money to Rosenberg; I don't remember the amount exactly; it was between $6,000 and $6,500; Rosenberg asked me for the money and I told him, 'I haven't got no money except that half I am supposed to get in from my subdivision through the Foreman Bank'; and then Rosenberg said, 'If that is the case I would like you to give me an assignment of the half you have got coming there, so as to pay off what you owe me'; and then I executed the assignment to him on April 29, 1932."

On the trial two contentions in substance were made by the beneficial plaintiff (American Glass Co.), also urged here, for a recovery from the garnishee (Liberty Bank). First, the recovery of its *entire* judgment of $1,360.50, because, as by the Siegel assignment to the Foreman Bank of March 19, 1930, Siegel was to retain, "so long as he was not in default in the performance of his obligations to said bank," a one-half interest in the subsequent payments that were to be made by the trustee (Liberty Bank) of said Trust No. 770, such an arrangement was a fraud, and therefore void, as to Siegel's other creditors. Second, as to the amount of the $507.15 check of May 8, 1931 (given by the garnishee *after* the service of the writ), the beneficial plaintiff is clearly entitled to recover in this action one-half of said amount, because, under the terms of the Siegel assignment to the Foreman Bank, one-half of said check belonged to Siegel,—he then not being in default in his obligations to the bank. The trial court, in allowing a recovery by the beneficial plaintiff of $1,360.50, evidently agreed with the first contention. But, after carefully considering the evidence, we are of the opinion that the trial court erred in the particular finding and judgment. It is not claimed, when Siegel made his assignment to the Foreman Bank in March, 1930, that it was not given to secure his bona fide indebtedness to the bank of $35,000. And, under the law, even if he had other creditors at the time, he clearly had the legal right to give a preference to the bank, provided it was given for a valuable consideration and without fraudulent intent. (*Third Nat. Bank of Mt. Vernon v. Norris,* 331 Ill. 230, 233, 234; *Nelson & Co. v. Leiter,* 190 Ill. 414, 422.) And we find no evidence of fraud in the giving or receiving of the assignment, or in the giving or receiving of the subsequent renewal notes, or in any of the subsequent transactions between Siegel and the Foreman Bank, or the latter's successor, the First Nat. Bank.

But we are of the opinion that there is substantial merit in the second contention of the American Glass Co., viz., that it is entitled to reach by the present garnishment process *one-half* of the proceeds of said check of $507.15, or $253.57, of May 8, 1931, given by the Liberty Bank to the Foreman Bank *after* the service of the garnishment writ. At that time Siegel had kept up with his payments to the Foreman Bank and was not in default, and, under the terms of his assignment to the Foreman Bank, said one-half of the check, or the sum of $253.57, belonged to him, and could be reached by a garnisheeing creditor.

And we are of the opinion that the trial court erred in its finding and judgment in favor of Rosenberg, intervening petitioner, in the sum of $1,559.53. Siegel's assignment to Rosenberg was not given until April 29, 1932,—more than two years after he had given the assignment to the Foreman Bank, and, hence the Rosenberg assignment was subject and subordinate to the assignment to the Foreman Bank. And there being no fraud in the assignment to the Foreman Bank, nor any fraud subsequent thereto in the transactions between Siegel and the Foreman Bank, Rosenberg is not entitled to recover anything in the present action as against the claims and prior rights of the Foreman Bank, or its successor or assignee, the First Nat. Bank.

It is here urged by counsel for Rosenberg that the judgment in his favor should stand because the present record does not properly present for review any question of fact or of law. The argument is that it does not appear from the bill of exceptions that the intervening petitioner, the First Nat. Bank, (a) made any motion for a new trial, or (b) took any exception to the entry of the judgments of the court, or (c) submitted any propositions of law to be passed upon. In our opinion there is no merit in the contention or arguments of counsel. In *Climax Tag Co. v. American Tag*

*Co.,* 234 Ill. 179, 182, it is said: ''A motion for a new trial in cases tried by a court without a jury is neither required nor authorized by law or the rules of practice, and can serve no purpose whatever in preserving questions for review in this court.'' (See, also, *Sands v. Wacaser,* 149 Ill. 530, 535; *Trout v. City of Herrin,* 245 Ill. App. 346, 349; *Pralle v. Metropolitan Life Ins. Co.,* 252 Ill. App. 460, 467, 468.) And it is not now necessary that it should appear in the bill of exceptions that an exception was taken to the entry of the judgment. (*Auto Truck Steel Body Co. v. Chicago Bonding & Ins. Co.,* 218 Ill. App. 230, 244, 245; *City of Lewistown v. Harrison,* 282 Ill. 461, 466; *Miller v. Anderson,* 269 Ill. 608, 617.) And it is not necessary that propositions of law be submitted in non-jury cases in order that a review of the finding and judgment may be had. (*Pittsburgh, C., C. & St. L. Ry. Co. v. Chicago City Ry. Co.,* 300 Ill. 162, 165, 166; *Bright v. Riedy,* 243 Ill. App. 314, 319; *Bitzer v. Southern Surety Co.,* 245 Ill. App. 295, 296, 297.)

Our conclusion is that the judgments against the garnishee, Liberty Bank, in favor of the beneficial plaintiff and Rosenberg, for $1,360.50 and $1,559.53, respectively, be reversed, and that the following judgments be entered in this court against the Liberty Bank, as garnishee,—one in favor of the beneficial plaintiff, American Glass Co., for $253.57, and the other in favor of the intervening petitioner, First National Bank, for $2,666.46; and that said intervening petitioner, First National Bank, recover its costs— one-half from said American Glass Co. and one-half from said Rosenberg. It is so ordered.

*Judgments reversed and judgments entered here.*

SULLIVAN, P. J., and SCANLAN, J., concur.

Finding of facts: We find as facts in this case that at the time of the service of the garnishment writ

(April 25, 1931) the garnishee (Liberty Bank) had moneys or funds in its hands belonging to plaintiff (Siegel), for the use of the American Glass Co., in the amount of $253.57; that at the time of the trial in September, 1932, said garnishee had money or funds in its hands belonging to Siegel's assignee, Foreman-State National Bank of Chicago, in the amount of $2,666.46; that the First National Bank of Chicago (intervening petitioner), as successor or assignee of the Foreman Bank, had succeeded to its right to receive such last mentioned amount; that Siegel's written assignment to the Foreman Bank, dated March 19, 1930, was given by him to secure a bona fide indebtedness then owing by him to said bank of $35,000; that said assignment was not made, nor were any subsequent transactions thereunder made, with any intention of defrauding any of Siegel's other or subsequent creditors; that at the time of the trial Siegel's indebtedness to the First National Bank (as successor or assignee of the Foreman Bank) amounted to more than $33,373.88, as evidenced by his renewed and unpaid note, due on June 10, 1931; that Siegel's written assignment to Rosenberg (intervening petitioner) of April 29, 1932, was not delivered until more than one year after the service of the garnishment writ herein and until more than two years after Siegel's said written assignment to the Foreman Bank had been executed and delivered; that said Rosenberg assignment is inferior and subject to said Foreman Bank assignment; and that neither at the time of the service of the garnishment writ nor at the time of the trial in September, 1932, did the garnishee (Liberty Bank) have any moneys or funds in its hands belonging to plaintiff (Siegel), for the use of Rosenberg.