52 F.Supp. 562 (1943)
In re VARDAMAN SHOE CO.
No. 10573.
District Court, E. D. Missouri, E. D.
September 27, 1943.
Blayney, Bedal, Cook & Fairfield, of St. Louis, Mo., for petitioners.
William R. Gentry, of St. Louis, Mo., trustee.
MOORE, District Judge.
The matter before the Court is a petition by certain general creditors of the debtor Vardaman Shoe Company estate, to wit: George W. Lane and William S. Bedal, trustees under the will of Sarah L. G. Wilson, deceased, for an order on the trustee to recover alleged preferences. The facts giving rise to this action are as follows:
Debtor, prior to adjudication, obtained financing by means of assigning accounts receivable to two banks, the City National Bank of Centralia, Illinois, and the National Stock Yards National Bank of National City, National Stock Yards, Illinois. Each of the several assignments bears printed on its face a proviso that it has been executed in the state of Illinois and is to be construed according to the laws of that state. Debtor is a corporation resident in, and doing business in, the state of Missouri. It is admitted that no notice was given the debtors who owed the assigned accounts, although the Shoe Company's books showed that the assignments had been made.
After institution of the reorganization proceedings, the trustee collected sums on account of the assigned accounts, and being of the opinion that the amounts so collected should be paid over to the assignees, he thereupon petitioned this Court for an order directing him to pay over the fund to the assignee banks. After a hearing at which only the trustee appeared, the Court issued two successive orders granting the prayers of the trustee's petition. Approximately *563 $187,941 was paid out of the estate pursuant to these orders. As the estate now stands, the general creditors' claims will not be fully liquidated, and petitioners claim that this sum should be recovered for their benefit.
Petitioners contend that the assignments were preferences within Section 60, sub. a, of the Bankruptcy Act, as amended by the Chandler Act of June 22, 1938, 11 U.S. C.A. § 96, sub. a, regardless of the time when the assignments were actually made because of the assignees' failure to notify the debtors of the assignments. The recent Supreme Court decision in the case of Corn Exchange National Bank, etc., et al. v. Norman Klauder, etc., 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. ___, is cited as authority for petitioners' contention.
Section 60, sub. a, of the Bankruptcy Act as amended provides: "A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, * * * the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. For the purposes of subdivisions a and b of this section, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy * * * it shall be deemed to have been made immediately before bankruptcy." (Emphasis supplied.)
In Corn Exchange Bank v. Klauder, supra, there was involved an alleged preference arising out of a so-called "non-notification" assignment of accounts which had been made in the state of Pennsylvania. According to the law of that state in force at the time of the transaction under consideration, if an assignee of an account failed to notify the debtor owing the account, then a subsequent good-faith assignee of the same account, who had no notice of the prior assignment and who notified the debtor before the latter paid the account, acquired good title as against the previous assignee. Phillip's Estate (No. 3), 205 Pa. 515, 55 A. 213, 66 L.R.A. 760, 97 Am.St.Rep. 746. Speaking through Mr. Justice Jackson, the Supreme Court held that under the facts of that case and the state law applicable, the assignment constituted a preference within Section 60, sub. a. It was held that the statute tests effectiveness of a transfer as against the trustee, by the standards which applicable state law would enforce against a good-faith purchaser. The Court said [318 U. S. 434, 63 S.Ct. 681, 87 L.Ed. ___]: "Only when such a purchaser is precluded from obtaining superior rights is the trustee so precluded. So long as the transaction is left open to possible intervening rights to such a purchaser, it is vulnerable to the intervening bankruptcy." In other words, the trustee is put in the shoes of a hypothetical subsequent assignee, and if there are any means under the applicable state law by which such a hypothetical subsequent assignee can defeat the prior assignee, then the trustee defeats the prior assignee. If the assignment is not so perfected according to the state law as to be absolutely invulnerable to attack, it takes effect only as of the date on which the bankruptcy petition is filed, bankrupt's debt which is secured thereby is deemed to be an antecedent obligation and the assignment is a preference within the terms of Section 60, sub. a. It is the position of the petitioners here that proper application of state law to the assignments under consideration would compel a ruling to that effect.
In answer, the trustee argues that the assignments must be construed according to the law of the state of Illinois, and according to that law, an assignee of an account need not notify the debtor whose account is assigned in order to protect himself against subsequent assignees. In reply to this, petitioners attempt to show that Missouri law is applicable to determine the relative position of the assignees and the trustee, and they say the Missouri law is to the same effect as the Pennsylvania rule applied in the Klauder case, supra. But they further contend that even under the law of Illinois, the position of the assignees is so vulnerable as to give the trustee a superior right. The trustee further defends on the ground that the order directing him to pay over the money to the assignee banks was an appealable one and that since the time for taking an appeal has elapsed, no further proceedings can be had in this matter.
*564 We might say here that there is no question but that the trustee, who is an able lawyer of long experience, acted in good faith and according to his best lights in procuring the order which was made, and that the Court, the late Judge Davis sitting, followed its best discretion in applying the facts and law then appearing. Both the Court and the trustee were undoubtedly motivated by a desire to save the estate the expense of what appeared to be fruitless litigation in contesting the assignees' claim to the fund. However, in view of the Klauder case, the situation appears to be worthy of further consideration.
First, as to the question of whether or not petitioners' right to contest the earlier orders of the Court in this matter has been foreclosed by their failure to take a timely appeal: The situation before us is an unusual one. The trustee had satisfied himself that the assignees should be paid and he co-operated with them in accomplishing that end. Had the trustee taken an adverse position, it might well be that either party to the matter could have and should have availed itself of the statutory right of appeal in the event of an unfavorable decision. It appears to be sound law that even an erroneous order of a court in bankruptcy will not be disturbed if proper mode of appeal is neglected. 8 Remington on Bankruptcy, Paragraph 3724.10, 1942 Supplement; Bernards v. Johnson, 314 U.S. 19, 62 S.Ct. 30, 86 L. Ed. 11; Tetzke v. Trust No. 2988 of Foreman Trust & Sav. Bank, 7 Cir., 85 F.2d 942. But here, the parties dissatisfied with the Court's ruling were not participants in the hearing which resulted in issuance of the now contested orders. No notice was given then of that hearing; in fact, these petitioners were not proper parties to the reorganization proceedings at the time the challenged orders were entered because at that time no order had been made requiring creditors to file claims against the estate. The two orders now under scrutiny were made respectively on February 17 and 19, 1942; the order requiring claims to be filed was not made until March 24, 1942. Must it be held that petitioners are therefore to be denied their day in court? While it is the concept of the Bankruptcy Act that the trustee represents the creditors in all proceedings (Chatfield v. O'Dwyer, 8 Cir., 101 F. 797), the trustee was certainly not their protagonist in this instance, since there is direct disagreement between trustee and petitioners as to what position should have been taken.
The trustee has cited authority, both from the courts and from text-writers, defining and exemplifying the field of appealable matters in bankruptcy proceedings, but none have a bearing on the situation before us, for here the aggrieved parties were not parties to the allegedly erroneous proceeding. Trustee points out that Section 57, sub. k, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. k, provides that: "Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed." But he further points out that there is a distinction between "allowable" and "provable" claims, that assignees' claims were merely provable, and that therefore the section just quoted does not authorize the Court to reconsider this matter.
Whether or not this distinction applies to the word "allowable" as used in Section 57, sub. k, it is certainly true that the power to correct its own errors is inherent in every court of record, at least during term time. Bronson v. Schulten, 104 U.S. 410, 26 L.Ed. 797; Henderson v. Carbondale Coal & Coke Co., 140 U.S. 25, 11 S.Ct. 691, 35 L.Ed. 332. And a court sitting in bankruptcy proceedings has no terms, but may act to correct its own errors at any time during the pendency of the matter. Sandusky v. First National Bank, 23 Wall. 289, 23 L.Ed. 155; Wayne United Gas Company v. Owens-Illinois Glass Co., 300 U.S. 131, loc. cit. 136, 57 S.Ct. 382, 81 L.Ed. 557. We conclude, therefore, that these petitioners may be heard.
We are now prepared to consider the ultimate question as to whether petitioners are entitled to the relief sought. There is substantial evidence to indicate that if the assignments were preferences, they are voidable preferences, at least with respect to the National Stockyards bank, because of assignee's knowledge of debtor's insolvency; an officer of the Stockyards Bank was a member of the board of directors of debtor corporation. The question then resolves itself into whether the assignment was so imperfect by reason of the failure to notify the debtors as to give the trustee *565 good title to the accounts as against the assignees.
The first question is: What state law is to be applied? While the written evidences of the assignments specify that they are to be construed according to Illinois law, this is not necessarily binding on a stranger to the contract, and there appears to be evidence that at least some of them were actually executed in Missouri. Furthermore, the situs of the debts prior to assignment was in Missouri, at debtor's place of business. According to Missouri law, a subsequent bona-fide purchaser of the accounts could acquire better title than the banks had, by giving notice to the debtor whose obligation was assigned. Murdoch & Dickson v. Finney, 21 Mo. 138; Smith v. Sterritt, 24 Mo. 260; Houser v. Richardson, 90 Mo.App. 134; Klebba v. Struempf, 224 Mo.App. 193, 23 S.W. 2d 205. If trustee's position were to be determined according to the Missouri rule, the decision of this case would necessarily follow that of the Klauder case, supra.
On the other hand, it appears to be the law of Illinois that a subsequent assignee cannot defeat a prior assignee simply by giving notice to the debtor. Knight v. Griffey, 161 Ill. 85, 88, 43 N.E. 727; Siegel, etc., v. Liberty Bank, 272 Ill.App. 43; Sutherland v. Reeve, 151 Ill. 384, 393, 38 N.E.2d 130. However, in jurisdictions abiding by this rule, known as the Massachusetts rule (see notes, 31 A.L.R. 876 and 110 A.L.R. 774), exceptional situations are recognized in which a subsequent bona fide purchaser can obtain good title as against a prior assignee who has not given notice. The Restatement of Contract, Section 173, sets out this rule and its exceptions, as follows:
"Section 173. Priorities Between Successive Assignments of the Same Right.
"Where the obligee or an assignee makes two or more successive assignments of the same right, each of which would have been effective if it were the only assignment, the respective rights of the several assignees are determined by the following rules:
"(a) A subsequent assignee acquires a right against the obligor to the exclusion of a prior assignee if the prior assignment is revocable or voidable by the assignor;
"(b) Any assignee who purchases his assignment for value in good faith without notice of a prior assignment, and who obtains
"(i) payment or satisfaction of the obligor's duty, or
"(ii) judgment against the obligor, or
"(iii) a new contract with the obligor by means of a novation, or
"(iv) delivery of a tangible token or writing, surrender of which is required by the obligor's contract for its enforcement, can retain any performance so received and can enforce any judgment or novation so acquired, and, if he has obtained a token or writing as stated in subclause (iv), can enforce against the obligor the assigned right;
"(c) Except as stated in Clauses (a) and (b), a prior assignee is entitled to the exclusion of a subsequent assignee to the assigned right and its proceeds."
The Massachusetts rule was adopted as general federal law prior to the rule of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and some of the exceptions thereto as noted in the Restatement were recognized by the federal courts. See Salem Trust Company v. Manufacturers Finance Company, 264 U.S. 182, loc. cit. 194, 199, 44 S.Ct. 266, 68 L.Ed. 628, 31 A. L.R. 867; Judson v. Corcoran, 17 How. 612, 15 L.Ed. 231. Likewise in Massachusetts. Rabinowitz v. Peoples National Bank, 235 Mass. 102, 126 N.E. 289, held that a prior assignee who had not notified the debtor could not recover against a subsequent assignee who had already collected the debt. The Illinois courts have not had occasion to consider any of these exceptions to the rule, but they appear to be sound law, so it is likely that even under the Illinois rule, these assignments were not so perfected prior to the filing of the bankruptcy petition that no bona-fide purchaser from the debtor and no creditor could have acquired any rights in the property transferred superior to the rights of the transferee. Therefore, if the Illinois courts make a declaration in accord with the general law as followed in other jurisdictions subscribing to the Massachusetts rule, the assignments to the banks were subject to defeat at the hands of a hypothetical bona-fide purchaser who obtained payment, judgment or a novation. Applying Section 60, sub. a, of the Bankruptcy Act as interpreted in the Klauder *566 case, supra, the assignments are not good as against the trustee, but are preferences.
We think, therefore, that the question of whether Missouri or Illinois law is applicable is moot, since under either rule, a bona-fide purchaser could have acquired rights superior to the rights of the assignees and thus the trustee is possessed of rights superior to those of the assignees. Accordingly, the order sought by petitioners will be granted.