J. E. GOODMAN, DOING BUSINESS AS GOODMAN FINANCE COMPANY, APPELLANT, v. B. M. NICHOLS, RESPONDENT.—188 S. W. (2d) 666.

Springfield Court of Appeals. June 26, 1945.

Rehearing denied July 13, 1945.

*Roy W. McGhee* and *Tedrick & Tedrick* for appellant.

*C. T. Bloodworth* for respondent.

VANDEVENTER, J.—This is an action in replevin begun in Butler County, Missouri. The petition alleges that the plaintiff (appellant here) was a mortgagee, after condition broken, in a chattel mortgage executed by Randall L. Cox on one Nash Ambassador Sedan, 1942 Model, Motor No. 389714 of the value of $945; that the mortgage was executed with the knowledge, connivance and consent of defendant, B. M. Nichols and that by reason thereof, plaintiff is entitled to the possession of said automobile, that demand was made but that it was wrongfully detained by defendant in Butler County, Missouri. The prayer was for possession, $100 damages and if the property can not be had, judgment for the sum of $945 and damages.

The answer denied the plaintiff's right to possession, denied that the defendant ever took said property from plaintiff's possession or had wrongfully detained it and asserted that plaintiff had suffered no damage whatever. Defendant further alleged that he was entitled to the possession at the time of the institution of the suit by right of purchase, that the automobile was of the value of $1010, that he paid the purchase money to the Nash Corporation, that he held a chattel mortgage from Randall L. Cox as security for the purchase price and became the owner by transfer of title and ownership upon default in payment of the note secured by the chattel mortgage on the automobile.

Plaintiff's reply admitted that the defendant at one time had a note secured by a chattel mortgage on the automobile but asserted that the note was paid on January 2, 1942 and that when plaintiff made the loan to Cox, the automobile was the property of Cox and was free and clear of all liens or encumbrances. All other allegations in the answer were denied. Plaintiff then asserted that on January 3, 1942, he loaned Cox the sum of $945 for which he received a note secured by a chattel mortgage on said automobile, that by virtue of default in payments on the note, plaintiff was entitled to possession of the automobile and that defendant had no right, title or interest therein. Plaintiff denied that defendant was the owner of the automobile and asserted that the alleged transfer of title and ownership was fraudulent and void (1) being contrary to and in violation of Section 8382, Revised Statutes Missouri 1939, (2) contrary to and in violation of General Limitations Order L-2-f issued by the Executive Department of the United States Government on February 13, 1941 prohibiting the sale of passenger automobiles from and after January 1, 1942 and (3) contrary to and in violation of Chapter 3 of Rationing Order No. 2 (a) of the Office of Price Administration of the United States Government. Plaintiff then alleged that the purported sale or transfer of said automobile by Cox to defendant was fraudulently made for the express purpose of creating and defrauding plaintiff out of the sum of $945, which he had loaned upon said automobile, and that defendant knew at the time the al-

leged sale was made that such was the intention of Cox and that defendant cancelled the note and mortgage for the express purpose of assisting Cox in cheating and defrauding plaintiff and that therefore defendant is estopped from asserting any right, title or interest to said automobile.

To this reply, defendant filed a paper designated as "Response of B. M. Nichols" which stated:

"That the said Nash Automobile, as stated in defendant's original answer herein, was delivered to this defendant by his co-defendant, Randall L. Cox on January 2, 1942 because said chattel mortgage, dated December 17, 1941, securing a debt in the sum of $1010, for the original purchase price of said automobile from the manufacturer, was past due, and upon demand for possession for the purpose of foreclosure, and upon the further agreement that same would be accepted by this defendant in full payment of the debt and satisfaction of said chattel mortgage, That the said Randall L. Cox was at the time and is now, wholly insolvent, and that said transfer of said automobile was free from any fraud or intent to defraud, and was for the sole purpose of collecting the said debt for cash furnished to pay the full purchase price of said car, to the manufacturer or wholesale dealer."

Randall L. Cox was originally a defendant but the case was dismissed as to him. A change of venue was taken and the cause tried in Wayne County.

One Randall Cox had been engaged in buying and selling used automobiles at Poplar Bluff, Missouri, in 1941. Shortly prior to November 20, 1941, he also became local agent for new Nash passenger automobiles and ordered two of them from the Nash Company at their St. Louis factory. These cars were shipped and a sight draft was drawn on Cox, by the company, for $2020. Upon the arrival of the automobiles and the draft at Poplar Bluff, Cox did not have the necessary money to pay the purchase price, so he induced the defendant to advance the $2020 and executed and delivered to defendant his note for that amount and secured it by a chattel mortgage on both of the automobiles. Later Cox obtained a loan from plaintiff on one of the automobiles and the chattel mortgage on both automobiles was released and a new note in the sum of $1020 was given to defendant and a new chattel mortgage on the remaining automobile executed and delivered to defendant to secure the note. This mortgage was filed for record and the note, dated December 17, 1941, was to become due in twelve days from the date thereof. The due date arrived and Cox did not have the money to pay the note. On the 2nd day of January, 1942, Cox agreed to deliver the car to defendant in full payment of the note, execute a bill of sale for same, and defendant agreed to cancel the note and chattel mortgage. On that date a bill of sale was prepared, signed and acknowledged before a notary public,

the car was delivered to defendant, with the bill of sale, who, pursuant to the agreement went to the recorder's office and cancelled and released the note and mortgage. The cancelled mortgage was then delivered to Cox but the note, being at defendant's home, was not delivered to Cox but was taken to the recorder's office, later cancelled and retained by the defendant.

Up to this point, as far as this automobile was concerned, there seemed to be no serious disagreement between Cox and defendant. Defendant had the new Nash car, Cox had his cancelled mortgage and the note was stamped "paid." He was out of the new car business and defendant had come into possession of a new car for $1020. But it seems that while Cox was trafficking in old cars, and before the new car venture, he had interested the defendant to the extent of obtaining a loan from him for $450 on some old cars of uncertain vintage. With the status of this transaction, defendant was not at all happy. With a new car in his possession, he did not need or want an aggregation of old ones. He did want his $450 however, and so informed Cox. Defendant had taken his new car to his home. The old cars apparently were not in condition to drive away from town, so Cox told the defendant if he could use the new car, he would drive to St. Louis and Flat River and get some money, that was owing to and due him, and pay defendant the $450. On the afternoon of the 2nd of January, defendant loaned Cox the new car and he departed, ostensibly on a collecting trip, but which was actually not of the character he had represented to defendant. On January 3rd, Cox appeared at the office of plaintiff with the new car, the cancelled mortgage and a yearning to borrow money with the new car as security. Plaintiff took the precaution to call the recorder's office at Poplar Bluff to ascertain if the mortgage exhibited was actually cancelled of record. Learning that it was cancelled, he loaned Cox $945 and took his note secured by a chattel mortgage on the car. The note was payable in monthly installments of $52.50 per month. Cox did not return with the car to Poplar Bluff and to defendant, the owner, for eight days and Mrs. Nichols, wife of defendant, becoming uneasy at the continued absence of Cox and having seen the bill of sale wherein the price of $1037 was placed upon the car, wrote plaintiff the following letter, signing defendant's name thereto:

"I am asking if you have financed a Nash Sedan for Randall Cox since the first of the year. I released the mortgage on this car, Jan. 2 and he took it to you, and we were to have received a check from you at once and since now this check has not arrived, and thought may have been lost in the mail. We were expecting your check for $1037. So if for any reason you have not as yet mailed this check, let me know, and also, when you do mail it please make it payable to B. M. Nichols and Randall Cox.

"I am Respectfully,
"B. M. Nichols,
"839 Cynthia St.
"Poplar Bluff, Mo."

She did not ask her husband about writing this letter for he was away from home at the time, he did not authorize it and he knew nothing about it until an answer was received from plaintiff. Defendant upbraided his wife for her meddling, and she explained the contents of the letter by stating that Cox had gotten the money from plaintiff to pay on the first car and she had seen that check and it was payable to both Cox and defendant, her husband. She stated that she knew with both names on the check Cox, alone, could not cash it. Cox did not pay defendant any of the $945 but did make the first payment of $52.50 on his note. Having cleared nearly $900 by mortgaging a car belonging to defendant, and doubtless being confronted with remorse of conscience, or fear of an unwelcome visit from the sheriff, he decided to fold his tent like the Arabs "and as silently steal away." At the trial his whereabouts was a matter of conjecture and his memory evoked only opprobriums from all parties concerned.

To add insult to injury and to further involve an already involved state of affairs, Cox, on February 12th, and without the knowledge of defendant, applied for a Certificate of Ownership for the car, listed the released chattel mortgage as a subsisting lien and when the certificate was received, apparently executed the assignment on the back thereof to defendant. This application was offered in evidence by appellant but was refused by the court.

About six weeks after Cox gave the mortgage, plaintiff sent two of his employees to investigate the transaction. They interviewed defendant and one of them testified that defendant told them that he had a bill of sale for the car, that Cox could not pay the note and he repossessed the car and marked the mortgage paid. That he loaned the car to Cox to go to Flat River to borrow money on the car so he could come back and pay it off. That he took the bill of sale in satisfaction of the note. On February 12, 1942, defendant applied for a Certificate of Ownership on the car and therein stated he had obtained the car by "repossession." He also made an affidavit at the same time that the car "had not been operated on the public roads or highways of Missouri during the current year." On February 29, 1942, defendant made another affidavit, which in part stated:

"I held a Chattel Mortgage on the following described car, 1942 Nash Car, Motor No. 389714, Randall L. Cox who gave the mortgage was unable to pay the indebtedness and had never secured a title to the car and being unable to pay off I ask him to let me have the car on the indebtedness, this he did and I cancelled the note and chattel mortgage."

The case was submitted to the jury and they returned the following verdict:

"We, the jury in the above entitled cause, find that at the time of the institution of this action, the defendant was entitled to the possession of the property mentioned in evidence, to-wit: One Nash Ambassador Sedan, 1942 Model, Motor Number 389714."

Judgment was rendered and from that judgment plaintiff appealed.

Appellant contends that the bill of sale from Cox to respondent is void because in violation of an order of the Executive Department of the United States dated September 13, 1941, "freezing" the sale of certain automobiles from January 1st to January 15th, 1942, inclusive. The order actually in effect at the time of the execution and delivery of the bill of sale (January 2, 1942) was supplementary to the one of September 13, 1941, and was as follows:

"In accordance with the provisions of Section 981.1 (General Limitation Order L-2, issued September 13, 1941,) which the following Order supplements.

IT IS HEREBY ORDERED THAT:

"981.7 SUPPLEMENTARY GENERAL LIMITATION ORDER L-2-f.

"(a) *Prohibition of Sales of Passenger Automobiles.* Until February 2, 1942, no producer, dealer or other authorized channel of distribution of passenger automobiles, as defined in Section 981.1 (a) (1) of General Limitation Order L-2, issued September 15, 1941, shall sell, lease, trade, lend, deliver, ship, or transfer any passenger automobile, except to other producers, dealers, or other authorized channels of distribution for resale; and no person (with the exception of other producers, dealers, or other authorized channels of distribution for resale) shall accept any such sale, lease, trade, loan, delivery, shipment or transfer of any passenger automobile. For the purposes of this Order 'Passenger Automobile' means a 1942 Model passenger automobile or any automobile which has been used less than one thousand miles (1000 miles)."

This order was issued January 1, 1942. It will not be necessary for us to decide what the effect of the above part of the order would have had on the validity of the bill of sale because the order further recites in paragraph (2) thereof and as exceptions thereto:

"(2) *Transfer of Title and Retaking of Possession under Conditional Sale, Bailment Lease or Similar Installment Contracts.* Nothing in this Order shall prevent:

"(i). The transfer of title to a vehicle pursuant to the terms of a conditional sale, chattel mortgage sale, bailment lease or similar contract, entered into prior to 6 P. M. Eastern Standard Time, January 1, 1942.

"(ii) The retaking, repossession or redelivery of any vehicle upon default, breach or other contingency under the terms of a conditional sale, chattel mortgage sale, bailment lease or similar installment contract entered into prior to 6 P. M. Eastern Standard Time, January 1, 1942.

"(b) All communications concerning this Order shall be addressed to

Office of Production Management

Washington, D. C.; Ref. L-2-f

"(c) *Effective Date.* This Order shall take effect immediately. Issued this 1st day of January, 1942."

The mortgage and note were executed December 17, 1941, and were therefore not covered by the order relied upon by appellant. Instruction No. VI, offered by appellant and refused by the court, was properly refused for it would have told the jury that the bill of sale was "illegal and void," as being in violation of the above order.

It is also argued by appellant that the evidence shows a collusion between Cox and respondent to defraud appellant and this argument is based upon the following circumstances: (1) the cancellation of the mortgage and its delivery to Cox; (2) the subsequent loaning of the automobile to Cox; (3) the letter written by Mrs. Nichols; (4) the affidavit made by Nichols on February 12th when he applied for the certificate of title; (5) the statement of respondent that he acquired the car by "repossession" and (6) the fact that Cox later applied for a certificate of ownership.

To us this argument is not convincing. Cox had paid his note by delivering the car to defendant in accordance with their agreement and was entitled to the cancellation of the mortgage and the return of it and the note to him. [Secs. 3089 and 3489, R. S. Mo. Anno. 1939.]

"A valid transfer of the mortgaged property to the mortgagee may operate to extinguish the mortgage debt when the parties so intend." [14 Corpus Juris Sec., p. 991, sec. 342, para. b.]

A dealer can transmit title to a new car by the execution of a bill of sale. No certificate of title is necessary. [Sec. 8382, R. S. Mo. Anno. 1939.]

After respondent had received the automobile and taken it to his home, he loaned it to Cox to go to St. Louis and Flat River for the avowed purpose of collecting money due him to pay appellant the $450. No moral turpitude or fraud on the part of respondent can be inferred from that incident. There is no evidence that respondent authorized his wife to write the letter to appellant, in fact the uncontradicted evidence is that he knew nothing about it for days afterwards and not until an answer was received and his wife told him. Under the circumstances, her act could not bind him. We are unable to understand on what theory this letter was admissible at all in view

of all the evidence relating to it. The application for a certificate of title by defendant, and his statements therein, were made long after the note and mortgage were executed and as far as we can see do not even remotely show any fraudulent design upon the part of the respondent. The application for a certificate of ownership by Cox made without the knowledge of respondent and long after the loan by appellant was inadmissible in evidence, and Cox's assignment to respondent (if in fact it was made) without respondent's knowledge could not bind him.

All this evidence was before the jury and they found against appellant. We think rightly so, but we are bound by their finding on conflicting evidence whether we agree with them or not. [Morris v. Freyer (Mo. App.), 151 S. W. (2d) 515; Albrecht v. Piper, 164 S. W. (2d) 105; Carter v. Casey, 153 S. W. (2d) 744.]

It is true that where one of two innocent persons must suffer loss by the fraud of a third, the one whose acts—negligence, carelessness or trustfulness—caused the loss should bear it. [C. I. T. Corporation v. Hume (Mo. App.), 48 S. W. (2d) 154; Edmonson v. Waterston, 119 S. W. (2d) 318, 342 Mo. 1082; Klebba v. Struempf, 23 S. W. (2d) 205, 224 Mo. App. 193.]

But whose act or negligence causes the loss in this transaction? Respondent, to protect himself, took an automobile in payment of an indebtedness to him. He cancelled the mortgage and delivered it to the debtor as the law required. He later loaned his car so Cox could collect some money and pay respondent another indebtedness. There is nothing in this conduct that denotes anything but a desire on his part to protect himself from the effects of improvident business transactions.

On the other hand, appellant took Cox's unsupported word as to the ownership of the car. Cox presented no invoice or bill of sale, no certificate of ownership or other document to appellant to corroborate his verbal statements and none was demanded or required. Cox did present a cancelled chattel mortgage and appellant testified that he called the recorder's office to see if it was actually cancelled. That was all he did to ascertain who owned the car. That was not enough. Mere possession is insufficient to establish ownership. "A person cannot mortgage property that he does not own so as to defeat the claim of the rightful owner. The fact that the mortgagee acts in good faith will not avail as against the real owner." [10 Am. Juris., page 734, sec. 26.]

The mere fact that property is in the possession of, and used by, another will not estop the owner from asserting ownership thereof as against one holding under a mortgage from the person in possession. [Alexander v. Busch, 66 Okla. 17, 166 Pac. 900, L. R. A. 1918E. 125.]

"Certainly it is not imposing too great a burden to require a mortgagee to trace by inspection of a bill of sale title to the car mortgaged." [General Motors Acceptance Corp. v. Ferguson et al., 191 N. E. 834, 47 Ohio App. 251.]

The case of Essex County Acceptance Corporation v. Pierce Arrow Sales Company of Boston, 192 N. E. 604, 288 Mass. 270, 95 A. L. R. 1314, is very similar to the case before us. Pierce Arrow Sales Company had delivered to G. W. Nixon, Inc., a retailer of automobiles, a new automobile accompanied by an invoice showing the Nixon Company as buyer thereof for $4082.50 and bearing the words "Settlement: Cash on Delivery, $4082.50." Nixon took the automobile and invoice to the Essex Company and borrowed $3200 on the car executing a note for that amount secured by a chattel mortgage on the car. The Pierce Arrow Company had delivered the car to the Nixon Company under a trust agreement. The car was to be paid for upon delivery, or, until paid for, it was to be held in trust for the Pierce Arrow Company. The Essex Company brought a replevin action against the Pierce Arrow Company based upon its rights under the mortgage. The Pierce Arrow Company claimed ownership of the car. The court held the Pierce Arrow Company was the real owner of the car, and that the Nixon Company had no right to mortgage it. The Supreme Judicial Court of Massachusetts said:

"The fact that the plaintiff lent the Nixon Company the money and took the mortgage in good faith will not avail, as it is the duty of the purchaser or mortgagee to see that the vendor or mortgagor has a good title to the property which he undertakes to sell of mortgage. [Coggill v. Hartford & New Haven Railroad, 3 Gray, 545, 550; Gilbert v. Thompson, 3 Gray, 550, note.]"

With this statement of the law, we are in full accord. The judgment of the trial court is therefore affirmed. *Fulbright, P. J.,* and *Blair, J.,* concur.